STONE & DOWNER CO. *v.* UNITED STATES (No. 2469)[1]

1. REMISSION OF ADDITIONAL DUTIES.
    Where goods were ordered in November, 1921, shipped in September, 1922, and entered in December, 1922, there was sufficient lapse of time to put the importer on notice that the market value may have advanced; and this was sufficient foundation for the judgment of the Board of United States General Appraisers, denying a petition for the remission of additional duties for undervaluation under section 489, Tariff Act of 1922. Cf. *Union Food Products Co.* v. *United States*, 13 Ct. Cust. Appls. 343, T. D. 41253, decided concurrently herewith.

---

[1] T. D. 41251.

2. Same.

Where importer had information as to an advance in value and neglected to give this information to his broker, the resulting undervaluation was correctly held inexcusable by the Board of United States General Appraisers at the trial of a petition for the remission of additional duties under section 489, Tariff Act of 1922.

## United States Court of Customs Appeals, December 4, 1925

Appeal from Board of United States General Appraisers, Abstract 47822

[Affirmed.]

*Waterhouse & Lockett (Joseph F. Lockett* of counsel) for appellants.
*William W. Hoppin,* Assistant Attorney General, for the United States.

[Oral argument Oct. 30, 1925, by Mr. Lockett and Mr. Hoppin]

Before Graham, Presiding Judge, and Smith, Barber, Bland, and Hatfield, Associate Judges

Bland, Judge, delivered the opinion of the court:

This is an appeal from the decision of the Board of United States General Appraisers denying a petition for the remission of additional duties, which petition was filed under section 489 of the Tariff Act of 1922. It is conceded by all parties that the appraised value was correct.

The record and papers in the case show that certain goods were ordered from Germany in November, 1921, by the Bates Manufacturing Co., of Lewiston, Me.; that they were shipped some time in September and arrived at the port of Boston on September 22, 1922; that the papers in the case were forwarded by the Bates Manufacturing Co. to Austin Baldwin & Co., of Boston, and that they, having moved to New York, forwarded the papers to Stone & Downer Co., brokers, of Boston, which company entered the goods for the consignee on December 18, 1922.

Three witnesses testified before the board at the hearing of evidence on the petition. Russell B. Rae, connected with the firm of Stone & Downer Co., stated that the papers in the case were furnished by the Bates Manufacturing Co.; that he took the papers in the case to Mr. Diebold, the Government examiner, with whom he consulted as to the proper value of the merchandise; that Mr. Diebold said he was not sure as regards the value, but that he should add 100 per centum to make market value, to offset depreciation in currency, and that this was done; that he made no other inquiries as to the value of the goods, but entered them at the value suggested by Diebold. The second witness, William F. Robbins, called on behalf of the importers, testified that he was connected with the firm of Bates Manufacturing Co.; that he purchased the merchandise himself; that he made no effort to ascertain the value of the goods, but sent the papers to the brokers for entry; that the goods were purchased in November, 1921; that the

price was changed in June, 1922, and that shipment was probably made between August 9 and August 11, 1922, since that is the way they were invoiced; that he was informed the papers had been sent to Stone & Downer Co., but that he gave them no further instructions as to the value of the merchandise, and made no inquiry as to value at any time; that he purchased such goods very infrequently; that in June, 1922, the seller of the goods in Germany said, "We can not furnish them for the first price"; that in September he had a notice of a change in value which was much more than the price of the goods involved in the shipment in controversy; that the letter from the German seller informing them of the increased price was dated September 6; that this information was not given to the brokers. Alexander Diebold was called as a witness on behalf of the United States, and he confirmed substantially the testimony of the first witness of the importers, Russell B. Rae, although he stated that he would not state it in the same words. He testified that he told Rae that they had never had merchandise like this at this port, but that the first thing would be for him to enter the goods at a sufficient price to make up for the depreciation of the currency, which he did. He stated that when he got the merchandise and made a comparison with similar merchandise imported there and at New York, he made a further advance of 75 per centum; that Rae did not tell him of any advance in the price of the merchandise.

The Board of General Appraisers denied the petition evidently upon the theory that the interested party, Bates Manufacturing Co., had received information before the goods were entered to the effect that they had advanced in value, but did not transmit this information to their agent who made the entry, and that proof of such conduct did not sustain the burden placed by the statute upon one asking for remission of additional duties. We think the board's decision was correct. The court below was clearly justified in concluding that the testimony, as a whole, did not show such good faith on the part of the importers as is required to sustain the burden placed upon them.

It will be recalled that the record shows that the goods were ordered in November, 1921, that they were shipped in September, 1922, and entered in December, 1922. If that part of the testimony, referring to the letter received by the consignee, was omitted from this case, we think, under the circumstances of this case, the length of time between the date of purchase and the date of shipment, and the date of entry should have put the importers upon inquiry as to the proper value of their merchandise.

In *Union Food Products Co.* v. *United States,* 13 Ct. Cust. Appls. 343, T. D. 41253, decided concurrently herewith, this court held:

It is possible that the board, in construing this evidence, formed the impression that a considerable period of time elapsed between the date of purchase and

the date of shipment. As the record stands, we are not called upon to pass upon what period of time existing between purchase and shipment would be calculated to put a reasonably prudent person upon his inquiry as to their proper value on the date of shipment. It seems proper to say, however, that one of the things which might be calculated to put such a reasonably prudent person upon his inquiry before making representations, to be acted upon by the appraiser, would be the existence of a long period of time between the time when he was familiar with the value abroad and the date of shipment. On this question no hard and fast rule can be laid down, no definite period of time can be fixed which, in all cases, will be regarded as sufficient to put a reasonably prudent person upon inquiry before declaring the value of his goods. It must depend upon all the circumstances of the case. If a period of time had elapsed between the date of purchase and the date of shipment, which would suggest to the reasonably prudent mind the necessity for inquiry before making a statement of value, it will not be sufficient, in an action of this character, for him to say that he entered at the purchase price and had no additional information other than that gained at the time of the purchase. This rests upon the principle stated in the case of *Finsilver* v. *United States*, 13 Ct. Cust. Appls. 332, T. D. 41250, decided concurrently herewith, that he speaks with conscious ignorance of the truthfulness of the fact contained in his statement. He represents that he did know when in fact he did not know, notwithstanding the fact that there were circumstances within his knowledge which should have caused him to ascertain the truth before giving expression to it. To hold otherwise would be to encourage frauds against the Government, and we think section 469 was intended to prevent frauds.

But, in the case at bar, in addition to the periods of time existing between the date of purchase of goods, and the date of shipment, and the date of entry, the importers, before entry, had positive information of the increased value of their merchandise, but, for some reason known only to themselves and not satisfactorily disclosed in the evidence, they failed to impart this very important information to their agent, to whom they intrusted the duty of stating the correct value of the imported merchandise.

The position of the importers, before this court, is that the failure of the importers to give the information to their agent was neglect, and that, under the Supreme Court decision in the case of *United States* v. *Fish*, 268 U. S. 607, neglect negatives the idea of fraud, or intent to deceive.

Regardless of whether the board concluded that the failure to transmit the information was the result of neglect or not, its finding embraces the conclusion that proof of such conduct does not show such good faith as to sustain the burden of showing by satisfactory evidence that they did not intend to defraud, deceive, or misrepresent.

The judgment of the Board of General Appraisers is *affirmed*.