UNION FOOD PRODUCTS CO. *v.* UNITED STATES (No. 2568) [1]

1. EVIDENCE, INVOICE AS.
    The date of the invoice is *prima facie* the date of the sale.
2. REMISSION OF ADDITIONAL DUTIES—MEASURE OF PROOF.
    At the trial of a petition for remission of additional duties imposed for undervaluation under section 489, Tariff Act of 1922, the issue is the good faith of the petitioner; and, if the entry value was believed by him to be correct and there was nothing in the transaction calculated to put a reasonably prudent person upon inquiry, he is entitled to a finding in his favor. One of the things which might be calculated to put a reasonably prudent person upon inquiry would be a long time between when he knew the value and when he made the entry. No definite period can be fixed, but it depends upon the circumstances of the case. Cheese was bought in Italy November 11, shipped November 13, and entered November 29. Importer informed himself as to the market value at the time of sale, and there is nothing in the record to have put him on inquiry as to an advance. The lapse of time between purchase and entry is not sufficient to put him on inquiry, and his petition should have been granted. Cf. *Stone & Downer Co.* v. *United States,* 13 Ct. Cust. Appls. 337, T. D. 41251, decided concurrently herewith.

United States Court of Customs Appeals, December 4, 1925

APPEAL from Board of United States General Appraisers, Abstract 48746

[Reversed.]

*B. A. Levett* for appellant.
*William W. Hoppin,* Assistant Attorney General (*Samuel M. Richardson* and *Oscar Igstaedter,* special attorneys, of counsel), for the United States.

[Oral argument Oct. 14, 1925, by Mr. Levett and Mr. Richardson]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

BLAND, Judge, delivered the opinion of the court:

This appeal involves the question as to what is satisfactory evidence to entitle the petitioner to remission of additional duties under section 489 of the Tariff Act of 1922.

The evidence consisted of the testimony of two witnesses, Hugo J. Angelicola and Frank Tomaiuli. The former testified that he was familiar with the invoices and the goods (cheese) imported; that he made the entry in the case; that his firm, Union Food Products Co., is "in continuous contact with the importers as any business should be, in order to buy in bulk, and we keep in touch by cable as to the general condition of the market"; that he submitted the invoice, in this case, to the broker for entry; that he did not inquire as to the market value because he was perfectly sure the invoice

[1] T. D. 41253.

price was right, and that there was no reason to make the inquiry; that the cheese was purchsed by Frank Tomaiuli, a member of his firm, and that he felt positive he would enter it at its market value. Frank Tomaiuli stated that he was a member of the appellant company, which is engaged in importing cheese from Italy; that he made an effort to keep in touch with the market value of imported Italian cheese when he bought the same; that he sometimes bought by cable, sometimes by mail, and sometimes through representatives in this country; that he, personally, bought the cheese in question at Rome; that the invoice price was the actual price paid for the cheese; that he paid 20 liras per kilo for the cheese; that in buying cheese he would go around in the market and inquire of different producers as to price and see what they had to offer and the prices quoted; that 47 cases of cheese (amount of entry) was a small purchase for his concern; that since he had been importing he had never had any other invoices advanced in value.

The cheese was appraised at 24 liras per kilo, additional duty was levied, and upon the evidence heretofore set out the petitioners asked for remission of the additional duty. A majority of the Board of General Appraisers, Judge Charles P. McClelland and Judge J. B. Sullivan, denied the petition, from which action Judge George Stewart Brown dissented.

There is no evidence in the record, except the official papers in the case, as to the exact date or dates, when Mr. Tomaiuli inquired as to prices of cheese, or when he made purchases abroad. The consular invoice is dated November 11, 1922. Another paper in the case, a "Declaration of Shipper of Food and Drug Products," is dated November 11, 1922. Also, accompanying the papers is an instrument printed in Italian which concerns the goods in question (probably some form of bill of lading), dated November 9, 1922. The merchandise was shipped on the 13th day of November, 1922, and was entered for duty November 29, 1922. In the absence of any other evidence it seems to us that the date on the invoice is some substantial evidence of the date of sale.

Since the witness Tomaiuli testified that he made the purchase of the goods in question, and at the time of purchase made the inquiries heretofore referred to, we think the evidence shows that the inquiries were made on or about November 11, 1922, which was only two days prior to shipment and 18 days prior to entry.

If the merchandise was purchased on or about the 11th, shipped on the 13th, and entered on the 29th of the same month, it seems to us that the period of time between making the inquiries and the time of making the entry was not such a long period of time as would have put a reasonably prudent person upon inquiry as to the probability of an advancement in price. Since there is no other fact or

circumstance connected with the case which would have been calculated to have put importers upon inquiry, we see nothing connected with the whole transaction but what supports the belief that when the petitioners stated the value of the merchandise at the time of shipment they were acting in good faith, had no reasonable grounds to believe that their statement was untrue, and did not speak with reckless indifference as to its truthfulness. In this instance we do not think the record discloses any evidence justifying the conclusion that the importers spoke with conscious ignorance of the true value. On the contrary, as we see it, the record shows that when they did give the value they had no reason to believe that they might be making a misrepresentation to the appraiser.

In this kind of case, where the board is called upon to determine whether the evidence submitted by a petitioner for remission of additional duties is satisfactory, we think it is the correct rule to say that it is a question of good faith on the part of the importer, and that if, in stating the value of his goods, he stated what he believed them to be worth, though incorrectly, when, at the time, there was nothing connected with the transaction calculated to put a reasonably prudent person upon inquiry, he is entitled to a finding in his favor.

It is possible that the board, in construing this evidence, formed the impression that a considerable period of time elapsed between the date of purchase and the date of shipment. As the record stands, we are not called upon to pass upon what period of time existing between purchase and shipment would be calculated to put a reasonably prudent person upon his inquiry as to their proper value on the date of shipment. It seems proper to say, however, that one of the things which might be calculated to put such a reasonably prudent person upon his inquiry before making representations, to be acted upon by the appraiser, would be the existence of a long period of time between the time when he was familiar with the value abroad and the date of shipment. On this question, no hard and fast rule can be laid down, no definite period of time can be fixed which, in all cases, will be regarded as sufficient to put a reasonably prudent person upon inquiry before declaring the value of his goods. It must depend upon all the circumstances of the case. If a period of time had elapsed between the date of purchase and the date of shipment, which would suggest to the reasonably prudent mind the necessity for inquiry before making a statement of value, it will not be sufficient in an action of this character for him to say that he entered at the purchase price and had no additional information other than that gained at the time of the purchase. This rests upon the principle stated in the case of *Finsilver* v. *United States*, 13 Ct. Cust. Appls. 332, T. D. 41250, decided concurrently herewith,

that he speaks with conscious ignorance of the truthfulness of the fact contained in his statement. He represents that he did know when, in fact, he did not know, notwithstanding the fact that there were circumstances within his knowledge which should have caused him to ascertain the truth before giving expression to it. To hold otherwise would be to encourage frauds against the Government, and we think section 489 was intended to prevent frauds.

We can not see on what proper grounds the board based its denial of the petition. The board's decision is based apparently upon the testimony which is set out in the opinion itself, as follows:

Q. Did you make any inquiries in reference to this particular shipment when you received the invoice?—A. Absolutely not, if it is not our property.

Q. When you received the invoice, what did you do with it?—A. Submitted it to the broker to make entry.

Q. Why did you not inquire?—A. Because I was perfectly sure it was the right price, and there was no reason to make any inquiries.

If this testimony had been offered in a case in all respects like the one at bar, except for the fact that the purchase of the goods or the inquiry as to value, had been made a long time prior to shipment, we think the board's interpretation of the testimony and its action thereon might have been proper, but we find no such statement of the facts in the record.

The judgment of the Board of General Appraisers is *reversed*.