UNITED STATES *v.* AUG. F. STAUFF & Co. (No. 4070) [1]

United States Court of Customs and Patent Appeals, December 6, 1937

*Joseph R. Jackson*, Assistant Attorney General (*Daniel I. Auster* and *Samuel D. Spector*, special attorneys, of counsel), for the United States.

*Puckhafer & Rode* (*George J. Puckhafer* of counsel) for appellee.

[Oral argument October 12, 1937, by Mr. Auster and Mr. George J. Puckhafer]

Before GRAHAM, Presiding Judge, BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges [2]

GARRETT, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, Second Division, the effect of which was to grant remission of additional duties assessed by the Collector of Customs at the port of New York upon an importation of merchandise.

The merchandise consisted of dried mushrooms imported from Poland. It was entered at the price shown on the consular invoice. The local appraiser advanced the value more than 100 per centum. There was an appeal by Stauff & Co. to reappraisement. The single judge to whom the appeal was assigned sustained the appraisement of the local appraiser, and no appeal was taken to re-reappraisement, so far as is disclosed by the record.

---

[1] T. D. 49306.

[2] Graham, Presiding Judge, sat during the argument of this case, but died before the opinion was prepared.

In the trial court two general issues were raised by the Government, the first being that the petitioner, appellee here, was not the proper party to institute the proceeding and, second, that, even if it were held to have been a proper party, the facts shown do not justify the granting of the petition.

The record is very unsatisfactory, a fact which is the subject of comment by the trial court. As best we can determine, the merchandise was bought in Poland by a party named N. H. Bronstein, who lived at the time in this country. His exact relation to the merchandise, however, is difficult to determine.

In a document entitled "Declaration of Shipper of Food and Drug Products," attached to the consular invoice, one N. H. Bronstein declares himself to have been the "seller" of the merchandise "grown in Poland." According to the consular invoice it was "purchased or agreed to be purchased by Russian Mushrooms Co. 174 Rivington Str. New-York."

In another paper entitled "Declaration of Nominal Consignee, Purchaser, or Ultimate Consignee," under the subheading "Declaration of Purchaser," N. Bronstein, "address c/o Russian Mushrooms Co.," etc., declared himself the purchaser. This declaration appears to have been sworn to by Bronstein before "Augt Stauff, Notary Public," on October 25, 1933. At the bottom of this paper after the words "Entry No. 746986" appear the words "Consignee N. Bronstein" and in the column headed "Seller or shipper" appears the name "Bronstein."

Bronstein did not testify in the case. There is in the record the testimony of one Aaron Kolker, who, in answer to a question "are you with the Russian Mushroom Co.," said, "Yes, sir." He did not state his relationship with the company. He testified that he bought a part of a shipment of mushrooms, seemingly all the mushrooms at issue here, but this latter is not altogether clear. He also testified that he paid, as a favor to Bronstein, a draft for $701.40 held by a banking company styled J. Henry Schroder Banking Corporation. This, as best we can determine, was for the mushrooms here involved.

It was through the banking company named that appellee became connected with the transaction. August F. Stauff, of appellee company, explained it as follows:

—A. We represent as brokers the J. Henry Schroder Banking Corporation in matters where there is merchandise to be cleared for the ultimate consignee. But the merchandise is held by the bank until the matters are finally settled. In that way Bronstein was sent to us by the banking corporation and we made entry in our name, naming Bronstein as the ultimate consignee but giving the delivery order to the J. Henry Schroder Banking Corporation to dispose of the merchandise as they saw fit.

Kolker seems to have accompanied Bronstein upon the occasion of the latter's visit to Stauff. It does not appear just when the draft above alluded to was paid.

The consumption entry made by appellee is dated October 25, 1933, and it may here be said that appellee's agency to make the entry is not questioned by the Government. On the back of the entry there is the following declaration signed by August F. Stauff, agent of appellee:

I, the undersigned, herewith declare that the consignee making this entry is not the actual owner or ultimate consignee of the merchandise covered thereby, but that the entry exhibits a full and complete account of all the merchandise imported in the vessel described therein by N. H. Bronstein c/o Rus. Mushroom Co., 174 Rivington St., N. Y. C., who is the actual owner or ultimate consignee.

It is supposed that this declaration was made by appellee for the purpose of absolving itself from liability for additional duties under the provisions of section 485 (d) of the Tariff Act of 1930. The record, however, does not disclose whether appellee produced a declaration of the owner in accordance with provision (3) of section 485 (d) requiring, in substance, that the party making the declaration shall within ninety days produce a declaration of the owner conditioned that he will pay all additional and increased duties, under such regulations as the Secretary of the Treasury shall prescribe.

However this may have been, nothing more is found of record concerning Bronstein's relation to the merchandise or to the transaction, but there is testimony by Stauff indicating that at about the time of the entry or shortly thereafter Bronstein was being sought by special agents of the customs service; that Stauff "helped them," but "could not locate Bronstein at the time."

All the subsequent proceedings shown by the record appear to have been conducted by appellee. It took the appeal to reappraisement in its own name. Subsequently it filed the petition here at issue, also in its own name. There is no reference to Bronstein anywhere in either the caption or the body of the petition, nor does it show that appellee filed it as agent.

The trial court upheld appellee's right to maintain the action by reason of certain documents found in the file forwarded by the collector to that court, under the provision of its rule 29. To certain of these papers the Government, before us, interposes the objection that they were not properly in evidence and hence were "improperly considered by the court." Because of the conclusion which we have reached upon the merits of the case, we do not find it necessary to pass upon the issue raised as to the propriety of looking to the documents in question. They throw no light on the merits of the case.

It is our view that conceding, without affirming, appellee's authority to file the petition, it has failed to meet the heavy burden resting upon it in a manner which justifies granting the relief sought. Already it has been stated that the value of the merchandise was advanced

more than 100 per centum. Section 489 of the Tariff Act of 1930, relating to additional duties, provides *inter alia:*

* * * If the appraised value of any merchandise exceeds the value declared in the entry by more than 100 per centum, such entry shall be presumptively fraudulent, and the collector shall seize the whole case or package containing such merchandise and proceed as in case of forfeiture for violation of the customs laws; and in any legal proceeding other than a criminal prosecution that may result from such seizure, the undervaluation as shown by the appraisal shall be presumptive evidence of fraud, and the burden of proof shall be on the claimant to rebut the same, and forfeiture shall be adjudged unless he rebuts such presumption of fraud by sufficient evidence. * * *

The section provides for remission of additional duties only upon a showing by "satisfactory" evidence "that the entry of the merchandise at a less value than that returned upon final appraisement was without any intention to defraud the revenue of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise."

The very meagerness of the testimony in this case upon relevant and essential facts and the failure to explain important elements of the transaction cast suspicion upon it. To say the least, there was a carelessness on the part of whoever the interested parties may be which, in our opinion, the statute does not admit of condoning.

Stauff testified that this transaction was the first matter his company ever had for Bronstein, who was sent to it by the banking company. He does not state that he made any inquiry of Bronstein as to the value of the merchandise, or as to what was paid for it, nor is it shown that he made any inquiry of the banking company as to the amount of the draft, although that would seem to have been a very natural thing for any person to do who had been engaged in the customs brokerage business for twenty-five years, as Stauff testified he had been.

The only inquiry he seems to have made, to which any response was received, was made of Kolker, who testified that he paid the draft for Bronstein and who, Stauff said, accompanied Bronstein when he visited appellee to secure its services as broker. His testimony as to the conversation with Kolker is limited to an answer to a single question. He testified that he made entry at "the invoice value" which he further stated was "Seventy cents per kilo." He was then asked:

Q. Is that the value that Mr. Kolker indicated was a fair value for merchandise out of Poland at that time for mushrooms?

Objection by Government counsel to the question was made and overruled, and the witness answered:

—A. It was.

Kolker was subsequently called by the Government as a witness relative to the draft, and during his cross-examination by counsel for

appellee he was questioned about his own buying of merchandise from Poland about the time of the entry of the goods in this case, and stated that he was buying some and that he knew how much that which he bought cost him. Then occurred the following:

X Q. You were in Mr. Stauff's office when Mr. Bronstein was there, and Mr. Stauff was to make entry? Do you recall that?—A. Yes.

X Q. Did you or did you not say to Mr. Stauff at that time that the price of seventy cents per kilo was the correct price for the merchandise?—A. I cannot say; I did not see the merchandise.

X Q. You did see the merchandise after that?—A. After that; certainly.

X Q. When you saw the merchandise itself was this price according to your experience a fair value for it?—A. Yes.

X Q. That is the invoice price here?—A. Yes.

Stauff also testified that his company sought information of the appraiser's office, and there appears of record, as Exhibit 1, a communication dated October 24, 1933, which shows such a request. It was returned immediately marked "No information JVD." It later developed that the initials were those of an examiner in the appraiser's office.

It is well settled that it is not required of the appraiser that he give information to a prospective entryman. *Mitsubishi Shoji Kaisha (Ltd.)* v. *United States*, 19 C. C. P. A. (Customs) 91, T. D. 45227. In that case it was not only pointed out that no duty rested upon the customs officials in this respect, but it was stated that even where information might be given it was not binding upon the officials, and we added, "nor can such information be relied upon to obviate the duty of the importer to ascertain and enter at the true value."

We agree with Government counsel that when the request addressed to the appraiser's office was returned marked "No information" it should have placed appellee on notice, and prudence would have required that before making the entry, which was done the following day, further and more particular information as to value should have been sought.

Under numerous authorities we feel it must be held that appellee failed to prove its case by any satisfactory or sufficient evidence. *Stone & Downer Co.* v. *United States*, 13 Ct. Cust. Appls. 337, T. D. 41251; *Lowe Co.* v. *United States*, 15 Ct. Cust. Appls. 418, T. D. 42590, with its numerous citations; *F. W. Woolworth Co.* v. *United States*, 16 Ct. Cust. Appls. 188, T. D. 42812; *International Forwarding Co. (International Oxygen Co.)* v. *United States*, 17 C. C. P. A. (Customs) 86, T. D. 43377. We feel this to be particularly true in a case where, as here, the entry, by the terms of the statute itself, was presumptively fraudulent.

The judgment of the United States Customs Court is *reversed*.