UNIVERSAL COMMERCIAL CORP. *v.* UNITED STATES[1]

United States Customs Court, Third Division

(Decided July 28, 1938)

*Siegel & Mandell* (*Sidney Mandell* of counsel) for the petitioner.
*Charles D. Lawrence*, Acting Assistant Attorney General (*Richard F. Weeks*, special attorney), for the respondent.

Before CLINE, EVANS, and KEEFE, Judges; EVANS, J., not participating

CLINE, Judge: This is a petition filed under section 489 of the Tariff Act of 1930 for remission of additional duties assessed upon an importation of ostrich feathers which were undervalued upon entry.

The shipment was entered at the port of New York at the invoice value in United States currency and was appraised in Argentine pesos, the appraiser's notation on the summary sheet being:

Appraised in Argentine Pesos. Proclaimed rate May 5, 1934, .341266. Importer claims correct rate .2385.

The importer filed an appeal to reappraisement and the record in the reappraisement proceeding was incorporated and made a part of

[1] C. D. 20.

the record in this case. The incorporated record shows that the reappraisement appeal was dismissed by the trial judge, the finding being that the only question involved was that relating to the conversion of the currency. The court said:

* * * it appears that there were two rates of exchange for the Argentine paper peso—one, that established by the Argentine Government as a currency control and used in the payment of certain staple goods, such as coffee, hides, etc., and the other the free value. The value of the Argentine peso certified to the Secretary of the Treasury, published in T. D. 47043, covering the date of exportation, equalled a controlled value for the peso for certain kinds of merchandise of 34.1266 cents, while payment was actually made in free pesos, which the president of the plaintiff corporation testified had a value in United States currency on the date of exportation of 23.85 cents.

The number of pesos which go to make up the foreign market value of the involved merchandise are not disputed, and I am therefore in effect being asked to appraise foreign money, which is not a subject for appeal to reappraisement. Manifestly the matter in difference between this appellant and the Government is one to be reviewed by protest, under the provisions of section 514 of the Tariff Act of 1930, and therefore this appeal must be and is dismissed. [*Universal Commercial Corp.* v. *United States*, Reap. Dec. 4107. ]

It appears from the record that the petitioner obtained quotations on the goods and transmitted his orders by cable. His first request for prices was dated March 29, 1934, to which an answer quoting prices was received on April 3, and the merchandise was ordered on April 9, 1934. The invoice for this shipment is dated May 5, 1934. On April 27, 1934, another cable giving quotations at the same unit price was received and additional merchandise was ordered by cable on the same day.

The petitioner testified that he purchased Argentine pesos in the open market in the United States at the rate of exchange of $0.2385 and that the same were transmitted to Buenos Aires by the bank to pay for the goods. He stated that there were two rates of exchange for pesos in Argentina—one the official controlled peso, which applied to transactions in certain commodities (not including feathers), and another, not restricted or controlled by the Government, which applied to transactions in other articles. The shipper converted the pesos into United States currency at the same rate of exchange which the petitioner used in purchasing the currency which was transmitted to him by cable, and invoiced the merchandise in United States dollars.

The petitioner testified further that previously the Treasury Department had prohibited the importation of these rhea feathers, which statement is verified in T. D. 46255–25, and that this was the first importation after the Treasury Department's decision revoking the former ruling.

Counsel for respondent, in his brief, stresses the point that the importer made no inquiry, either from the appraiser or elsewhere, as

to the value of the merchandise before he made entry at the customs house. The petitioner testified that when the invoice arrived he forwarded it to his customs broker to make entry and did not consult with the appraiser prior thereto; that he knew that there was no one other than the shippers of this merchandise who had any information regarding the foreign market or export value thereof and that he knew no persons from whom he could secure any information in this country concerning the value of the goods.

In the case of *Sing Chong & Co.* v. *United States*, T. D. 41275, 48 Treas. Dec. 614, 615, the court said:

* * * If one goes to seek advice of man who knows less than himself, how much weight should be given to it as evidence of diligence and good faith? In the absence of special circumstances we are inclined to believe that when an importer seeks advice from an examiner it is meaningless so far as establishing his good faith is concerned.

In the case of *Union Food Products Co.* v. *United States*, 13 Ct. Cust. Appls. 343, T. D. 41253, the importer did not make inquiry as to the market value before making entry because he believed he knew that the invoice price was right and the goods were shipped shortly after the order therefor was given. The trial court denied the petition but the decision was reversed on appeal. The court said at page 345:

It is possible that the board, in construing this evidence, formed the impression that a considerable period of time elapsed between the date of purchase and the date of shipment. As the record stands, we are not called upon to pass upon what period of time existing between purchase and shipment would be calculated to put a reasonably prudent person upon his inquiry as to their proper value on the date of shipment. It seems proper to say, however, that one of the things which might be calculated to put such a reasonably prudent person upon this inquiry before making representations, to be acted upon by the appraiser, would be the existence of a long period of time between the time when he was familiar with the value abroad and the date of shipment. On this question, no hard and fast rule can be laid down, no definite period of time can be fixed which, in all cases, will be regarded as sufficient to put a reasonably prudent person upon inquiry before declaring the value of his goods. It must depend upon all the circumstances of the case. If a period of time had elapsed between the date of purchase and the date of shipment, which would suggest to the reasonably prudent mind the necessity for inquiry before making a statement of value, it will not be sufficient in an action of this character for him to say that he entered at the purchase price and had no additional information other than that gained at the time of the purchase.

Shortly after entry the customs examiner called the petitioner to his office to discuss the value of the feathers and the petitioner submitted the aforementioned cablegrams to him. The appraised values in pesos are the same as the unit prices given in the cablegrams.

The customs examiner was called as a witness and testified that the shipment herein involved was the first importation he had received of this class of merchandise for some time and that he obtained

all the information used in his appraisement from the importer. When asked on cross-examination whether he believed he was making his return in the pesos which the importer paid for the merchandise, the examiner replied, "No, I just appraised them in pesos." The appraiser's note on the summary sheet indicates that the merchandise was appraised in a particular kind of pesos, namely, those valued at $0.341266.

We note that in T. D. 47043, wherein the rates of exchange certified by the Federal Reserve Bank are given for the date of May 5, 1934, which is the date of shipment of the merchandise covered by the transaction here involved, the rate for the Argentine peso ($0.341266) contains a reference to a note below which reads "Nominal rate. Firm rates not available." While the accuracy of the published rates of exchange can not be questioned in this proceeding, the lack of positive assurance in the note lends strength to the claim of good faith and expressed belief of the petitioner that the entry was made at the correct value.

In the case of *P. Giusti & Co.* v. *United States*, T. D. 41274, 48 Treas. Dec. 610, it was held that an importer had the right to enter goods in the currency paid although the collector instructed him to do otherwise, and the fact that the importer did not follow the collector's advice did not indicate an intent to defraud. In this case the petitioner actually expended United States dollars to purchase the foreign currency which was transmitted by the bank to Argentina to pay for the merchandise. He entered the shipment at the same amount in United States dollars as he paid for the goods.

In the case now before the court the merchandise was shipped within a month after the petitioner secured quotations from abroad and ordered the goods and within eight days after additional quotations were received. We are of opinion that such circumstances would not suggest to a reasonably prudent mind the necessity for inquiry before making a statement of value upon entry.

We are of opinion that the petitioner acted without intention to defraud the revenue of the United States, or to conceal or misrepresent the facts, or to deceive the appraiser as to the value of the merchandise. Accordingly, the petition for remission is granted. Judgment will be entered in favor of the petitioner.