**No. 59731.**—Louis Gallet Knitting Mills, Inc. *v.* United States, petition 7122–R (Pittsburgh).

WILSON, Judge: This is a petition for remission of additional duties pursuant to section 489 of the Tariff Act of 1930, which duties accrued by reason of the undervaluation on entry of certain knit wool sweater fronts, imported from Austria and entered at the port of Pittsburgh, Pa.

The merchandise was entered on June 26, 1952, in United States dollars at the invoice unit price covering 30 pieces at $3 each and was appraised in United States dollars at $6.514 each, net, packed. Appraisement at the higher value than that made on entry resulted in the imposition of additional duties.

The circumstances surrounding the present shipment, as disclosed by the testimony of the president of the petitioning corporation who imported the involved merchandise, are as follows: The petitioner in this case shipped certain cashmere yarn to a fabricator in Vienna, Austria, to be manufactured into sweater fronts. After fabrication, the merchandise was returned to the petitioner in this country. The record discloses that the yarn used to make these sweater fronts was supplied to the petitioner by Julius Forstman & Co., Inc., Passaic, N. J. The witness stated that he paid the processor of the yarn in Austria only the labor charge for the fabrication of the material into sweater fronts and that, in turn, he was paid by the supplier of the yarn only the amount paid the processor for labor. He further testified that the processing of these sweater fronts was on special order and that he did not make any effort to ascertain the market value of the goods, explaining that "the cost charged to us for one of these parts exceeds sometimes the sales value of a complete sweater in the United States. We figured that the charge is correct and we didn't make any inquiries abroad for this transaction" (R. 4). He then stated that, in making entry, he did not have any intention of defrauding the revenue of the United States or of depriving the Government of any revenue to which it was entitled and that there was no intent to conceal or suppress any information from the appraiser or other customs officials.

On cross-examination, petitioner's witness testified that, at the time he made entry of the merchandise in question, he did not include the cost of the yarn that he shipped to the processor in Austria, stating, as excuse for his failure to do so, that "It is at no time charged to us and I was not familiar that the yarn had to be included" (R. 6). In this connection, the record discloses that, on May 12, 1952, prior to entry, the shipper wrote a letter to the petitioner inquiring whether the cost of the yarn should be included in the invoice price and informing the petitioner that, if such cost was included, "the price of the sweater front would about double" (R. 6), to which it appears that the petitioner, on May 20, 1952, likewise prior to entry, advised the shipper by letter (respondent's exhibit 1) not to include the price of the yarn in the invoice charge, stating as follows:

With regard to the invoicing we agree with you not to make any changes as it would work against our advantage. In other words, kindly continue to invoice in the very same way as up to now. [Respondent's exhibit 1.]

The witness subsequently explained that his statement that the inclusion of the price of the yarn in the value of the goods "would work against our advantage" merely was an expression of opinion that, if said price were included, of course, he would have to pay more duty.

It further appears that, subsequently, 2 days prior to entry of the merchandise, the petitioner executed and delivered to the appraiser a "submission sheet" (respondent's exhibit 2), supplying information as to the value of the goods, wherein it was stated, with respect to the shipment in question, "originally quoted @ 2.85 ea. but filled @ 3.00 ea.," which submission sheet requested the appraiser to furnish any further information he might have as to the value of the goods. The witness testified that later he had two or three conferences with the appraiser relative to the value of the merchandise. He admitted that, at such times, he did not inform that officer as to the cost of the yarn used to make up the sweater fronts in question (R. 8). Thereafter, the value of the merchandise was increased by the appraiser.

Petitioner's witness further testified that, prior to entry, he likewise did not tell his broker anything about the cost of the yarn, but merely instructed him to clear the shipments, again explaining "I didn't tell him because I didn't know I had to" (R. 9). He stated further that he was totally unfamiliar with customs procedure and that he had no knowledge that the value of the yarn had to be included in the value of the merchandise on entry.

The record further discloses that, after the value of the merchandise was questioned by the appraiser, the petitioner wrote to the supplier inquiring as to its value and, upon obtaining the value of the yarn employed in the fabrication of the imported merchandise, gave such information to the appraiser and likewise supplied that officer at that time with all papers, records, and documents then in its possession, relative to the value of the merchandise (R. 12, 17).

With respect to the price of such yarn, the petitioner's witness stated that the prices for the material fluctuated very frequently. He agreed that cashmere yarn had a market value, but stated that he did not know the cost of the material in question before it was shipped to the fabricator in Austria, although admitting that he had insured the merchandise at a price he believed correct. The witness further testified that at no time was he charged by the supplier for the price of the yarn and that, accordingly, he was unaware of what the yarn really cost.

The appraiser of merchandise who, in his prior capacity as examiner, had handled the involved shipment, testified that he had discussed the value of the involved merchandise with the petitioner's witness prior to entry and that, at such time, he instructed the petitioner to furnish original copies of the commercial invoices covering the merchandise and suggested to the petitioner that a broker be engaged to expedite the shipment of the goods, inasmuch as petitioner was

unfamiliar with customs practice. The witness further stated that, at the time, no mention was made by the petitioner of the fact that the price given for these knit sweater fronts was really a processing charge; that it did not include the cost of the yarn; and that nothing was said as to the petitioner having shipped American yarn to the processor to be knit into these sweater fronts. He confirmed previous testimony that, in making inquiry of the petitioner as to the value of the merchandise, the petitioner made available to him its file covering the goods in question, stating that this was the first time that he had knowledge that the shipper had made inquiry relative to including the cost of the yarn in the price of the goods. The witness also stated that he had no knowledge that the yarn had been shipped to Austria to be processed until he was so informed by the collector which, he testified, however, was at a date subsequent to entry of the involved merchandise.

Here, as in all cases of this character, the principal question is the good faith and intention of the petitioner in entering its merchandise. *Union Food Products Co.* v. *United States*, 13 Ct. Cust. Appls. 343, T. D. 41253. We are of opinion that the petitioner in this case is not entitled to relief.

It appears that, in response to an inquiry from the shipper as to whether the cost of the yarn should be included in the invoice price for the goods, petitioner advised the shipper not to include the cost of the yarn in such price (respondent's exhibit 1). Such instruction was given prior to entry of the involved merchandise, when petitioner had an opportunity to ascertain whether or not it should include the cost of the yarn in the value of the imported goods.

To a prudent businessman, the inquiry from the shipper should have put the petitioner on notice. If the petitioner did not know whether it should have included the value of the yarn in the value of the merchandise, it should have made inquiry. The record discloses that petitioner merely submitted to the appraiser a so-called submission sheet, requesting information as to the value of the goods. He did not, however, inquire from that officer whether the yarn used to make up the imported sweater fronts should be included in the value, although petitioner's witness admitted that the yarn in question had a market value. Confirmatory of petitioner's knowledge is the fact that it had the yarn insured prior to shipment abroad for processing.

The fact that petitioner was to be paid only the labor charge for having the imported sweater fronts made up is not in point. Here, upon reimportation, a new article was imported, and petitioner had the duty to enter the importation at its true value.

It further appears that petitioner made no inquiry of its customs broker whether the cost of the yarn should be included in the value of the goods on entry, but merely instructed the broker "to clear the shipments."

Such a showing of indifference as to the value of the merchandise, as appears in the record in this case, does not meet the requirements of satisfactory proof of good faith under the statute. *Intra-Mar Transport Corp., Formerly Gondrand Transport Corp.* v. *United States*, 42 C. C. P. A. (Customs) 94, C. A. D. 578.

Under all the circumstances, we are of opinion and find that the petitioner has failed to establish by satisfactory evidence that entry of the involved merchandise at a less value than that returned upon final appraisement was without any intention to defraud the revenue of the United States, or to conceal or misrepresent the facts of the case, or to deceive the appraiser as to the value of the merchandise.

The petition is denied. Judgment will be entered accordingly.