FINSILVER, STILL & MOSS *v.* UNITED STATES (No. 2411)[1]

PETITION FOR REMISSION—MEASURE OF PROOF.

A petition under section 489, tariff act of 1922, for remission of additional duties imposed for undervaluation is not supported by petitioner's testimony, standing alone, without corroborating facts or circumstances, that he had no fraudulent intent in making the entry. Proof that the entry statement of value was made with reckless disregard of its truth or falsity, without reason to believe it to be true, or under such circumstances as to put him on inquiry as to its truth, would tend to contradict, not corroborate, such testimony. Goods were entered at the invoice price without inquiry as to value, importers testifying that they relied upon their foreign offices to inform them if there was any change in value. Between the purchase and the entry the market was "jumping constantly." The judgment of the Board of United States General Appraisers denying the petition is affirmed.

United States Court of Customs Appeals, December 4, 1925

APPEAL from Board of United States General Appraisers, Abstract 47021

[Affirmed.]

*John R. Rafter* (*Harry M. Farrell* of counsel) for appellants.

*William W. Hoppin*, Assistant Attorney General (*Charles D. Lawrence* and *Ralph Folks*, special attorneys, of counsel), for the United States.

---

[1] T. D. 41250.

[Oral argument Oct. 13, 1925, by Mr. Rafter and Mr. Lawrence]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

BLAND, Judge, delivered the opinion of the court:

Appellants have appealed to this court from a decision of the Board of United States General Appraisers, denying their petition for remission of additional duties. The petition is filed under section 489 of the Tariff Act of 1922, pertinent portions of such section relating to additional duties being as follows:

ADDITIONAL DUTIES.—If the final appraised value of any article of imported merchandise which is subject to an ad valorem rate of duty or to a duty based upon or regulated in any manner by the value thereof, shall exceed the entered value, there shall be levied, collected, and paid, in addition to the duties imposed by law on such merchandise, an additional duty of 1 per centum of the total final appraised value thereof for each 1 per centum that such final appraised value exceeds the value declared in the entry. * * * Such additional duties shall not be construed to be penal and shall not be remitted nor payment thereof in any way avoided except in the case of a manifest clerical error, upon the order of the Secretary of the Treasury, or in any case upon the finding of the Board of General Appraisers, upon a petition filed and supported by satisfactory evidence under such rules as the board may prescribe, that the entry of the merchandise at a less value than that returned upon final appraisement was without any intention to defraud the revenue of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise.

The merchandise in question consisted of certain woolen goods imported from France and entered on April 23, 26, and 30, 1923. The merchandise was purchased in France between the 1st and 10th of January, 1923. The entry was made at the invoice price, 39.25 francs less 3 per centum per meter. The merchandise was appraised at 44.50 francs less 3 per centum per meter. The advance in value on appraisement was, therefore, approximately 13 per centum.

Three witnesses were called in behalf of the importers. The foreign buyer, Sol C. Moss, who made the purchase, testified that the invoice price was the actual price paid for the merchandise; that he signed the entries in the case; that his firm is continually advised by both their Paris and London offices of any advance in the foreign market values, and that this was true as to the merchandise under consideration; that he always made entry at a higher value than the purchase price, if the information furnished him was to that effect, but that he had no such information with reference to this shipment. John G. Volker, an examiner for the Government, was called by the importers, and he testified that there was a sudden advance in the market on the goods in question between January and April, i. e., between the date of purchase and the date of entry; that the values were jumping constantly between those dates; that Mr. Moss did not consult him as to values before making the entries;

that this was the first time he had ever made an advance upon the importations of this firm. Henry Heil, of the importing firm, testified that he had charge of importations and assisted Mr. Moss in making entries; that he was familiar with the invoice, but had absolutely no knowledge of the advance in the market value; that he made no effort in this case to ascertain the market value, but just assumed that it was the same as invoiced. Upon this testimony the importers asked for remission of the additional duties.

It will be noticed that Mr. Moss made no statement showing why he was deceived as to the value, except that he relied upon the fact that reports of advance would be reported to his office. Three months elapsed between the purchase date and the entry date, and during that time the market was "jumping." Inquiries by importers as to values of other invoices were made from the examiners, but no inquiry was made in this case.

In the case of *Fish* v. *United States*, 12 Ct. Cust. Appls. 307, T. D. 40315, and in the case of *United States* v. *American Metal Co. Ltd.*, 12 Ct. Cust. Appls. 440, T. D. 40612, this court reviewed somewhat the history of legislation on additional duties. The Tariff Act of 1922 and most of its predecessors show unmistakably a purpose on the part of Congress to require the importer to enter his goods at their full value in order that the Government may obtain the full amount of tariff duties authorized. To accomplish this purpose, requirements for the levying of additional duties for undervaluation became the settled policy of Congress in tariff legislation. In the tariff act of 1913 no remission of additional duties could be had unless the undervaluation was a manifest clerical error. Ofttimes a very great hardship was worked upon the importer where he had been misled or deceived into entering his goods at a lower value than their proper value, notwithstanding the fact that it was clear that he had in good faith made every reasonable effort to ascertain their correct value. No doubt these cases of injustice were called to the attention of Congress before the passage of the Tariff Act of 1922, and it, in section 489, sought to soften some of the harshness of the law in respect to the matters indicated.

We do not believe, however, that there is anything, either in the act itself or in the history of the legislation, which would indicate that Congress regarded the levying of additional duties in order to prevent undervaluation any less important at the time of the enactment of the statute than in the years previous. The wholesome effect of levying additional duties in order to prevent fraud and deceit in connection with undervaluations was no doubt as appealing to Congress when it passed the recent act as it was at the time of previous enactments.

In the Fish case, supra, this court said:

While there may be no legal presumption of fraud or intent to deceive, etc., in the fact that additional duties have been levied or that an undervaluation had been made, Congress, recognizing the possibility and even the probability of the existence of such conditions, placed the burden upon the importer to show affirmatively that such did not exist.

In reviewing this case, the Supreme Court said:

The issue to be found by the board was whether the importer showed by his evidence that the entry of the merchandise at a less value than that returned upon final appraisement was without any intention to defraud the revenue of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise. The issue presented to the board was, "Has the importer sustained the negative in this regard?" Merely to find that the importer was careless is not a finding sufficient to justify the board in deciding whether there should be a remission. Both the importer and the Government are entitled to a finding either that there was no intent to defraud or that the importer did not sustain his burden that there was no such intent. *United States* v. *Fish*, 268 U. S. 607.

Later, in the American Metal Co. case, supra, in construing the same paragraph of the same act this court said:

Under the provisions of section 489, authorizing such proceedings as are here involved, the issue is one largely of the good faith and intentions of the importer as shown by the facts. Congress has seen fit to liberalize this statute from its old rigid and inelastic form, and has used language plain and unequivocal in so doing, giving large discretion to the Board of General Appraisers in such cases. We do not wish to be understood as indicating in any manner here that the importer can in such cases avow his good faith and intentions and ipso facto avoid the imposition of the additional duty. Such a practice would lead to endless abuses and frauds upon the customs, and the statute would, as suggested by counsel for the Government here, become a nullity. Nor can he stand by, having an opportunity to inform himself of the value of his importation, and excuse himself alone by his ignorance of its true value.

It would seem to us that the principles laid down in the three cases cited, when applied to the case at bar, unmistakably point to the solution of the question involved. The statute does not impute fraud, or attempt to deceive, on the part of the importer unless the undervaluation is more than 100 per centum. The law, however, casts upon the petitioner asking for relief by remission of additional duties the burden of showing by satisfactory evidence, under such rules as the board may prescribe, that he did not intend to defraud the revenue of the United States, or to conceal, or to misrepresent the facts in the case, or to deceive the appraiser as to the value of the merchandise.

In what way can he satisfy the mandate of the statute and thus maintain the burden placed upon him to produce satisfactory evidence that he did not have such intent? His statement in the evidence to the effect that he did not have such intent, standing alone, without corroborating facts or circumstances, being the issue to be determined by the court, certainly is not such proof as is required. And if the evidence

he submits affirmatively shows that he represented a fact to be true, to wit, a certain value of his goods at the time of shipment, and at the time having no reasonable grounds for believing his representations to be true, or if it shows that his representations were made with reckless disregard of their truthfulness, it can not be said to corroborate his denial of intent but would have the opposite effect. Proof that a representation is made with the knowledge that reasonable inquiry might develop its untruthfulness would have the same tendency.

Under all the circumstances of this case we can not say that the board had no right to assume that the importers knew that the market value of their goods was liable to fluctuate in value after their purchase. The board might well have concluded that if they had received the reports from their London and Paris offices, as they claim they did, those reports would have advised them of the advance, since the proof is clear that the market was "jumping."

Trial courts have no right to reject the unimpeached and undisputed testimony of a witness, but in weighing same or in giving consideration to the testimony, they have the right to reject any part of the same which is contradicted, or rendered unbelievable, by other facts in the case. We can not say whether the board rejected the testimony of the witness that he had not received any report of advance, or whether it concluded that the importers made the statement of value of their goods in reckless indifference as to its truthfulness. In remission cases the importer is not the insurer of the correctness of the value of his goods, neither is he held to the strict rule that he must positively know their value, but he certainly can not be said to be acting in good faith if he declares an incorrect value for his goods, to be acted upon by the appraiser, when, by reasonable inquiry, he could have been advised that his statement was false. And by reasonable inquiry we do not mean that in every instance the importer is required to make inquiries before declaring what he believes to be the value of his goods, but if there is any circumstance which would put a reasonably prudent person, under similar circumstances, upon inquiry, then it is his duty to make such inquiry. The importers, in this instance, may have had no knowledge that their importation was worth more on the date of shipment than it was on the date of purchase, but they represented that they *did* know its value. We think there were circumstances calculated to put them upon their inquiry, and that reasonable inquiry would have developed the inaccuracy of the stated value. Under these circumstances the importers have not supported the allegations of their petition by satisfactory evidence that the entry of the merchandise at a less value on the date of shipment than that returned upon final appraisement was without any intent to defraud the revenue, or to conceal or misrepresent the facts of the case, or to deceive the appraiser as to the value of the merchandise.

It is urged by counsel for the importers that the board's decision rests upon carelessness, and that the case of *Fish* v. *United States,* supra, decided by this court and affirmed by the Supreme Court of the United States, is directly contrary to the board's opinion. We think otherwise. In the Fish case the board affirmatively found, "The most that can be said about the importer was that he was very careless." This was equivalent to finding that he was not guilty of fraud. If the board had said that the importer had not sustained his burden by proving that there was no such intent to defraud or deceive as specified in the statute, for the reason that the incorrect statement of value was made with negligent or careless disregard of its truthfulness, it would have found that his conduct did not show such good faith as would entitle him to the relief prayed for. Then the question before this court, and before the Supreme Court, would have been a very different one.

In the case at bar the board stated:

After giving careful consideration to the record in the case and the evidence of all the witnesses examined, the board is unable to find that the importer has proven his case. * * * There is nothing to show that Moss did or did not know of these advances in market, nor anything to explain why he did not attempt to find out about them. The only light thrown on that subject was by the witness Heil, who said he was an assistant to Mr. Moss, and that he had no knowledge of any advance in the market, had made no effort to ascertain the foreign market value at the time he made the entry, and in this particular he just assumed it was the same as invoiced. * * * The board thinks the burden is on the importer to inform himself as to the market and either disclose the true value on entry or on petition for remission of additional duty show some effort on his part, some diligence, some reason why he was deceived or failed to make the proper entry. The petition is denied.

This is an entirely different statement of the case from that in the board's decision in the Fish case. Therein the board only found that he was very careless. Here it finds they have not proved their case, i. e., they have not shown by satisfactory evidence that they were not guilty of fraud or intent to deceive, conceal, or misrepresent.

We think the evidence was not satisfactory. The judgment of the board is *affirmed.*