SCHRIKKER v. UNITED STATES (No. 2620) [1]

1. IGNORANTIA LEGIS NEMINEM EXCUSAT.
    One who deals with our customs laws is charged with knowledge of them; and the fact that he did not know our language is no excuse for his ignorance of them.

2. REMISSION OF ADDITIONAL DUTY—SUFFICIENCY OF EVIDENCE.
    Importer testified that there were many different grades of cabbage; that he knew the shipper of this lot was in the habit of shipping inferior ones; that, when they arrived invoiced at the price of inferior ones, he entered them at the invoice price, not knowing, and having no reason to know, that they were of a better grade; and that he had no fraudulent intent. His petition for remission of additional duty imposed for undervaluation under section 489, Tariff Act of 1922, should have been granted.

United States Court of Customs Appeals, February 25, 1926

APPEAL from Board of United States General Appraisers, Abstract 48965

[Reversed.]

*Walden & Webster* (*Walter F. Welch* and *Edward F. Jordan* of counsel) for appellant.
*William W. Hoppin*, Assistant Attorney General (*Oscar Igstaedter* and *Reuben Wilson*, special attorneys, of counsel), for the United States.

---
[1] T. D. 41433.

[Oral argument January 20, 1926, by Mr. Welch and Mr. Igstaedter]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

BLAND, Judge, delivered the opinion of the court:

Appellant petitioned the Board of General Appraisers, under section 489 of the Tariff Act of 1922, for remission of additional duties levied by the collector at the port of New York on account of the undervaluation by appellant of his imported merchandise, cabbage.

The pertinent part of section 489 reads as follows:

Such additional duties shall not be construed to be penal and shall not be remitted nor payment thereof in any way avoided, except in the case of a manifest clerical error, upon the order of the Secretary of the Treasury, or in any case upon the finding of the Board of General Appraisers, upon a petition filed and supported by satisfactory evidence under such rules as the board may prescribe, that the entry of the merchandise at a less value than that returned upon final appraisement was without any intention to defraud the revenue of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise.

Evidence upon the petition was heard before Board 1, which, with a divided court, denied the petition. The ruling opinion, by Judge Sullivan, which was concurred in by Judge McClelland and from which Judge Brown dissented, is as follows:

This is a proceeding brought under section 489 of the Tariff Act of 1922 for the remission of certain additional duties.

This is another case where the only evidence offered is the statement that the invoice price is the market value. The appraiser found it was not the market value, and the importer did not attempt to refute the value found by the appraiser. We can not grant relief on any such statement. *Of course the importer did not have any desire to defraud. What is required is an attempt on his part to ascertain the market value.* The invoice price is a circumstance—a strong one—but it is not sufficient alone and unsupported to warrant a remission of additional duties.

The relief prayed for in the petition is denied. (Italics ours.)

The evidence consisted of the testimony of two witnesses for the importer. Walter E. Knapp, of the firm of Charles D. Stone & Co., customhouse brokers, testified that he attended to making the entry upon the request of the importer, who is the appellant herein; that Mr. Schrikker brought his papers to him and requested his firm to make the entry; that they had made one previous entry for appellant which consisted of onions; that it was passed as correct; that appellant stated that the invoice prices represented the home-market value; that the importer, who was from Holland, was in New York, and stayed a week; that he submitted to him a consular invoice and that he knew him to be a shipper from the home market; that he (Knapp) did not have any belief that the prices at which he entered were less than the correct price for entry purposes; that he acted on the importer's instructions; that the importer spoke very poor

English and that he could hardly be understood; that he could understand some of appellant's English, but that it was hard to make him understand; that he did not regard it to be necessary to inquire of anyone else, engaged in a similar trade, as to the correct market value, since the importer came from the other side.

Counsel for importer made the statement before the board that the prior entry of onions did not involve value, since they were entered at a specific rate of duty.

Commission was issued to the United States consul in Holland to take the testimony of the importer. The deposition consists of interrogatories, cross-interrogatories, and the answers to the same. The answers of appellant are summed up by Judge Brown in his dissenting opinion, which, we think, embraces all the important facts deducible therefrom:

\* \* \* that he lives in Grootebroek, North Holland, and is engaged in the vegetable trade; that he was a director in the incorporated firm of N. V. C. van Kleeff's Exporthandel Grootebroek, North Holland; that it was part of his business to travel and to make foreign business connections for the firm; that he received the shipment in consignment at New York and went to the broker with his consular invoice, who helped him and attended to the matters connected with the getting of the goods through the customs; that he considered the price named in the consular invoice was all right; that he understood that the consul does not sign any invoices that do not have correct values; that there is a great difference in the price of cabbages; that small cabbages are much dearer than large ones, less compact cabbages have also a much lower value; that he knew that the shipper usually shipped second and third quality stuff; that consignments are cheap; that bought cabbages must be of high quality or the buyers will complain; that in the case of bought goods the price is invariably set higher to include the profit; that if the goods arrived several days earlier the shipper would have had a serious loss, because the market was very poor; that while the goods were in transit he doubted whether he could get a good price for them; he was convinced that the price he had given was correct; that he was in conference with the United States appraiser, who asked him to come into his office a few days after he received the cabbages; that the examiner asked him to give an explanation of the values of the cabbages; that he told him that there were many prices in Holland and he trusted that the prices in the consular invoice were all right; that as he left him he felt he was satisfied with his explanation; that he had never imported into the United States before except some onions assessed at a specific rate; that he neither was a citizen nor a permanent resident of the United States; that he had been here about 5 weeks before making the entry; that it is difficult for him to speak and understand the English language, in which he had so little practice, and it was very different from what he had heard spoken in his own country several times.

In answer to cross-interrogatories he said that he did not have charge of the shipment and had no connection with filling out of the invoice; that the owner of the merchandise at the time it left Holland was N. V. Exporthandel van Duyn & Zoon, Rijnsburg, Holland; that he got it in consignment from them and it was made out in their name because they were the shippers and owners; that he was not personally engaged in selling similar merchandise at the time of export in Holland, because he was in America; that he had personally sold some

fine cabbages to a man in Brooklyn. Further, that he thought the price mentioned in the invoice must always be the right price and, if not, the American consul would refuse to sign it, and that he had only to give the appraiser an explanation of how it was possible the shipper arrived at the price mentioned on the invoice; that he did not know he could correct a declaration or give another declaration, and that he had no reason to do so; that he had only the consular invoice and the letter of van Duyn to go by; that Mr. van Duyn wrote him that he had bought the cabbages at florins 1.80 to florins 2.00 a package f. o. b. Rotterdam; that he knew nothing about the quality, but thought the price was right, because he knew the firm of van Duyn was always shipping stuff of poor quality. As to his interview, that, he said, took place at the office of the appraiser about April 10, 1923.

The papers in the case show that the invoice was dated at Rijnsburg, Holland, March 16, 1923, and that the merchandise was shipped on that date. Consumption entry was made on April 2, 1923.

From appellant's viewpoint we can not see how very much importance can be attached to the fact that he had difficulty in understanding and being understood when conversing in English, except that this fact might have some bearing upon the question as to why he did not make inquiries of other shippers of similar goods. Appellant's inability to accurately speak or understand the English language may have been emphasized in this case with a view of showing ignorance of our customs laws. Appellant claims that he understood the certificate of the American consul to the invoice would only be given in case the values were correct. Lack of knowledge of our customs laws and regulations has for many years been the basis of claims filed against the Government of the United States of America, by foreign Governments, the settlement of which resulted in their being adjudicated before certain international claims commissions. It was there contended by this Government that a foreigner's ignorance of our customs laws and regulations could not be permitted to give him advantages not enjoyed by importers, resident of the United States, who had familiarized themselves with such laws and regulations. In this position our Government was sustained by the American and British Claims Tribunal in a recent decision (1925), involving claims to citizens of Canada for duties paid on hay imported into the United States. In the course of their decision the arbitrators of the Tribunal said:

The plea that the claimants were ignorant of their rights under the law, and consequently entitled to refunds of duties, regardless of the law, through the award of an international tribunal can not be sustained. Importers, whatever their nationality, must be presumed to know and are bound by the customs laws of the countries with which they are dealing.

Also see *Will o' the Wisp* in Hare's Report, page 92.

The question before this court, involving the question of ignorance of the law, may be somewhat different from the question before the

tribunal, since, in this case, it is a question as to whether the importer intended to defraud, deceive, or misrepresent. And, it may be urged, that an importer, ignorant of the requirements of our laws, could not have intended to defraud the revenues by his failure to enter his goods at their full value. The principle of law announced in the maxim, *ignorantia legis neminem excusat*, applies in both civil and criminal matters and is sanctioned by centuries of experience. Anyone dealing with the United States customs authorities is presumed to have full knowledge of all laws and regulations applicable thereto. He is presumed to know, and, in contemplation of law, does know that it is his duty to enter his goods at the value prescribed by the statute, or else, in event of his failure to do so, to suffer such penalties or exactions as the law prescribes.

To hold that an importer who undervalues his goods can obtain the benefits of remission of additional duties levied on account of the undervaluation by showing that he was ignorant of our laws, would result in making one law for ignorant importers and another law for those who had acquainted themselves with their statutory rights and duties. In the case at bar, the importer, regardless of whether he actually knew the provision of the statute is presumed to know that it was his duty (as applicable to the provision of section 489), to enter his goods at the foreign value or the export value whichever was the higher. If he should contend that it was his understanding of the law that the selling price of goods imported into this country was always the foreign value, it would not be sufficient, under the requirements of section 489, to entitle him to avoid the additional duties provided for. He can not be heard to say, "I did not know the requirements of the law, and because of my lack of knowledge I, therefore, did not intend, by not complying with it, to defraud, or misrepresent the facts."

We think this question was settled almost a century ago in the case of *Barlow* v. *United States,* 7 Pet. 404, in an opinion delivered by Justice Story. There the court was passing upon the question raised under the 84th section of the duty collecting act of 1799, chapter 128, which provided that if any goods which shall have been entered for the benefit of drawback upon exportation, shall be entered by a false denomination, or erroneously as to the time when, and the vessel in which, they were imported, or shall be found to disagree with the packages, quantities, or qualities, as they were at the time of the original importation, etc., all such goods shall be forfeited: "*Provided,* That the said forfeiture shall not be incurred, if it shall be made to appear to the satisfaction of the collector, or of the court in which a prosecution for the forfeiture shall be had, that such false denomination, error or disagreement happened by mistake or accident, and not from any intention to defraud the revenue."

The question in the case arose as to whether or not the sugar entered for drawback was refined or not refined, and became a question of law as to whether or not the sugar was entered by a false denomination. It was evidently claimed that there was no intent to deceive, but that there was a misunderstanding of the law. In the opinion Justice Story remarks:

If they were entered by a false denomination, then they are subject to forfeiture, unless the party can bring himself within the exceptions of the proviso of the 84th section. And here the *onus probandi* rests on him to extract the case from the penal consequences of an infraction of the law. Were these sugars entered by a false denomination, happening by mistake or accident, and not from any intention to defraud the revenue? There was no accident in the case; there was no mistake in point of fact; for the party knew what the article was when he entered it. The only mistake, if there has been any, is a mistake of law. The party in the present case has acted, indeed, with his eyes open; against the known construction given to the acts by the Government and the officers of the customs. He has not been misled; and his conduct in the course of making the shipment, if it be entirely compatible with good faith, is not wholly free from the suspicion of an intention to overreach, and evade the vigilance of the custom-house department. He has made every effort in his power to obtain the drawback, by passing off, as refined sugars, what he well knew were not admitted to be such by the higher government officers.

But we do not wish to put this case upon any ground of this sort. It presents the broader question, *whether a mistake of law will excuse a forfeiture, in cases of this description. We think it will not.* The whole course of the jurisprudence, criminal as well as civil, of the common law, points to a different conclusion. It is a common maxim, familiar to all minds, that ignorance of the law will not excuse any person, either civilly or criminally; and it results from the extreme difficulty of ascertaining what is, *bona fide*, the interpretation of the party; and the extreme danger of allowing such excuses to be set up for illegal acts, to the detriment of the public. There is scarcely any law which does not admit of some ingenious doubt; and there would be perpetual temptations to violations of the laws, if men were not put upon extreme vigilance to avoid them. There is not the least reason to suppose that the legislature, in this enactment, had any intention to supersede the common principle. The safety of the revenue, so vital to the Government, is essentially dependent upon upholding it. For mistakes of fact, the legislature might properly indulge a benignant policy, as they certainly ought, to accidents. The very association of mistake and accident, in this connection, furnishes a strong ground to presume that the legislature had the same classes of cases in view; accident, which no prudence could foresee or guard against, and mistakes of fact, consistent with entire innocence of intention. They may both be said, in a correct sense, to happen. Mistakes in the construction of the law, seems as little intended to be excepted by the proviso, as accidents in the construction of the law. Without going more at large into the circumstances of the case, it is the opinion of the court that the judgment of the circuit court ought to be affirmed, with costs. (Italics ours.)

It will be noted that the court clearly distinguished between a mistake in point of fact and a mistake of law.

The petitioner stated that he believed the invoice value to be correct, and, we think, assigned very convincing reasons, other than those referring to the effect of the consul's certificate, why he thought

it was correct. His statements are clear and not evasive. Apparently he made a good-faith effort to satisfactorily show to the board that he did not intend to defraud, deceive, or misrepresent the facts.

In *Lee & Co.* v. *United States*, 13 Ct. Cust. Appls. 269, T. D. 41205, this court said:

> If an importer has no information and knows of no circumstance or circumstances which would raise a reasonable doubt in the mind of a prudent business man as to the true market value of purchased goods, the price paid for them in the ordinary course of trade in a free open market may well be accepted by him as their market value.

One of the facts and circumstances which might be deemed calculated to put an importer upon notice that his goods were being undervalued upon entry is the length of time existing between the shipment and the entry. *Finsilver* v. *United States*, 13 Ct. Cust. Appls. 332, T. D. 41250; *Union Food Products Co.* v. *United States*, 13 Ct. Cust. Appls. 343, T. D. 41253.

In the *Union Food Products Co.* case, *supra*, this court said:

> If the merchandise was purchased on or about the 11th, shipped on the 13th, and entered on the 29th of the same month, it seems to us that the period of time between making the inquiries and the time of making the entry was not such a long period of time as would have put a reasonably prudent person upon inquiry as to the probability of an advancement in price. Since there is no other fact or circumstance connected with the case which would have been calculated to have put importers upon inquiry, we see nothing connected with the whole transaction but what supports the belief that when the petitioners stated the value of the merchandise at the time of shipment they were acting in good faith, had no reasonable grounds to believe that their statement was untrue, and did not speak with reckless indifference as to its truthfulness.

In the case at bar the goods were shipped on the 16th of March, 1923, and entered on the 2d of April, 1923. In our opinion this period of time between shipment and entry was not such, under the circumstances, as would be calculated to put a reasonably prudent person upon his inquiry, so that his failure to inquire would indicate lack of good faith. This is especially true under the facts in this case. The importer was a dealer in Holland in this particular kind of merchandise. He knew the man who was shipping him the goods and he was expecting a certain kind of goods. From his knowledge of the shipper and his methods of doing business, obviously, he expected goods inferior to the ones shipped; that there was a great difference in the different grades of cabbage. He, no doubt, believed the shipper would have invoiced the cabbage at its full value.

The conduct of the petitioner, in this case, is difficult to harmonize with bad faith or fraud. True enough, under the law, in order to justify the board in denying the petition, it is not necessary that it should affirmatively find that the entrant was guilty of fraud, or

intent to deceive, but the facts from which the board draws its conclusions, if the petition is denied, should at least be harmonizable with the possibility or probability of fraud.

We observe in the ruling opinion of the board the following statement:

Of course the importer did not have any desire to defraud. What is required is an attempt on his part to ascertain the market value.

We agree that the law contemplates that an entrant shall use great care and exercise good faith in declaring the value of his goods. This is expected of him, and if his lack of care or of diligence in ascertaining the truthfulness of his declaration shows a lack of good faith, then he should be denied the benefits of the remission provisions of the statute. But it is manifestly improper to deny him remission because of his lack of diligence, and, at the same time, find affirmatively that he did not intend to defraud. His lack of good-faith efforts to ascertain the truthfulness of his declaration might justify the board in declaring that he had not adduced satisfactory evidence of the lack of such intent and, therefore, not having discharged the burden placed upon him by the statute which would entitle him to the relief sought, his petition would, under such circumstances, be properly denied.

We think the evidence was satisfactory and that the majority opinion of the board misinterprets the law. The judgment of the Board of General Appraisers is *reversed.*