(C. D. 1262)

GENERAL ELECTRIC COMPANY v. UNITED STATES

United States Customs Court, Second Division

(Decided July 31, 1950)

*Whalen, McNamee, Creble & Nichols* (*Sherman A. Murphy, Jr.*, of counsel) for the petitioner.

*David N. Edelstein*, Assistant Attorney General (*Jerome Vale* and *John J. Antus*, special attorneys), for the respondent.

Before LAWRENCE, RAO, and FORD, Judges

RAO, Judge: This is a petition for the remission of additional duties in the sum of $53,670, assessed, pursuant to the provisions of

section 489 of the Tariff Act of 1930, upon an importation of various types of steel ball bearings. The merchandise in question was entered as invoiced at various unit prices, which represented the prices charged to the petitioner by its Canadian affiliate, the Canadian General Electric Co., Limited, of Peterboro, Ontario, Canada, from whom the merchandise was purchased. As the appraiser at the time of entry had no information as to the value of the merchandise other than that furnished by the petitioner, he appraised the same as entered. Subsequently, an appeal for reappraisement was taken by the collector. Said appeal was decided upon an agreed statement of facts establishing values exceeding the entered values by more than 100 per centum in each instance to be the proper dutiable values of the merchandise. *United States* v. *General Electric Co.*, 19 Cust. Ct. 241, Reap. Dec. 7370.

At the outset, the court desires to commend counsel in this case for the excellence of the briefs prepared and submitted by them.

At the trial of the instant case, the petitioner called three witnesses to support its contention that the entry was made without any intention to defraud the revenue of the United States, to conceal or misrepresent the facts of the case, or to deceive the appraiser as to the value of the merchandise. One witness testified in behalf of the respondent.

It appears from the testimony of Henry J. Wolte, who is a buyer for the General Electric Company, and from concessions made by Government counsel, that petitioner consumes a substantial quantity of ball bearings, but that it does not manufacture them; that it normally purchases ball bearings from six American firms; that in the fall of 1945, these companies were struck; that in order to keep its production lines rolling, petitioner was required to purchase ball bearings in Canada. The witness placed an order therefor with the Canadian affiliate of General Electric Company, which purchased the same from SKF, a Toronto bearing company. The invoice for the merchandise which was forwarded from Canada was paid in full by check. No attempt was made to elicit from this witness any information as to the foreign or export values of such or similar merchandise, nor was he questioned in any manner with respect to the entry.

Petitioner then called Edward A. McAleer, who testified that he was the manager of Freedman & Slater, customhouse broker, who was employed to make the entry in this case. The consumption entry was prepared, under his supervision, in accordance with the consular invoice which he received. He first prepared a submission sheet, which was sent to the petitioner with the request that it supply information as to any other or higher values than those appearing in the consular invoice. The submission sheet was filled out and signed by the General Electric Company, and submitted to the examiner by

this witness. He made no other efforts to ascertain whether or not the true value was stated in the entry papers. He testified, however, that it was not his intention or the intention of any member of his firm to deceive the appraiser concerning this entry or to defraud the revenue of the United States. On the submission sheet, which was received in evidence as petitioner's exhibit 4, there is a notation in red ink, bearing the initials G. J. B. which reads "No information 12/14/45."

Austin T. McLoughlin, presently a buyer for petitioner, also testified in its behalf. He stated that in the year 1945 he was office manager for the purchasing department of petitioner, which position he took over in May of that year; that prior to the involved entry, he had not handled any foreign transactions other than some importations from Canada of merchandise manufactured by Canadian General Electric Co., Limited, to petitioner's drawing number which was valued on a cost-of-production basis and certain items which were repaired in Canada and imported under bond, not subject to duty. When the entry in this case reached his desk, he was out of town, but he advised his assistant by telephone as to how to handle the entry. When he returned, he made a perfunctory examination of the papers. He did not question whether or not the prices on the entry were the freely offered prices as he was not familiar with the "freely offered price provision." As far as he was concerned, the prices included therein were considerably higher even before duty than the prices he had been paying in the United States for the same kind of bearings. He did not, however, know the prices of similar merchandise in Canada. The witness stated further that it was not his intention to deceive the appraiser as to this entry or to defraud the revenue of the United States.

On cross-examination, it was developed that the predecessor of the witness, a Mr. Losty, was still in the employ of the General Electric Company, and could easily have been contacted for information concerning customs matters. However, he was not consulted about the entry in this case. Furthermore, the witness admitted that he received from Mr. G. J. Beauvol, the appraiser at the port of Albany, a letter dated January 21, 1946, respondent's exhibit A, in which, among other things, he was advised as follows:

Column 11 should show the current price or quotation for home consumption or for export, whichever is the higher. It is suggested that the figures in Column 11 be carefully reviewed as current price for home consumption is usually quoted in the currency of the country of exportation whereas in the invoice filed by you Columns 9 and 11 are identical.

He thought the quoted paragraph was ambiguous, but did not ask Mr. Beauvol for any explanation thereof, although 3 days later he wrote Beauvol concerning other portions of the letter. He sent a copy of the letter to the Canadian General Electric Co., Limited,

to ascertain if the proper values had been stated, and was advised by them that the prices were correct and that as far as they knew no "special deal" was received. He did not convey this information to Mr. Beauvol. He felt that the values stated in the entry were the proper values, and made no effort to ascertain whether or not there was a higher foreign value. He recalled, however, that in September of 1946, Beauvol apprised him of the fact that the Canadian General Electric Co., Limited, received a higher discount from the Canadian SKF, Limited, than other Canadian concerns. His testimony concerning this conversation is, in part, as follows:

X Q. Do you recall whether or not Mr. Beauvol directed your attention to the fact that the general price list of SKF from which the purchase was made by the Canadian General Electric Company, do you recall that?—A. I don't recall that specifically, but we did discuss values.

*     *     *     *     *     *     *

X Q. Do you recall whether or not he apprised you of the fact that the Canadian General Electric received a higher discount from the Canadian SKF Ltd. than the other Canadian concerns?—A. Not in the same class, sir, of manufacture.

X Q. Did he tell you whether or not other Canadian concerns received a lower discount than the Canadian General Electric from purchases made?—A. Yes.

*     *     *     *     *     *     *

X Q. Do you remember saying, "I know that the other Canadian concerns did not receive the same discount that the Canadian General Electric Company did?"—A. The Canadian General Electric Company would receive the same discount for the same class of electrical manufacturing.

X Q. I am not talking about the same class of manufactures. I am talking about the price offered to other companies who are not in the same class?—A. That is right, and the discount would be lower; the discounts were lower or the prices higher.

X Q. In other words, the Canadian General Electric Company received a higher discount from the Canadian SKF which were not in the same category?—A. That was subsequently proved and we paid duty.

When petitioner learned that there were higher values in Canada than those declared on entry, it stipulated such values, and paid the duty due upon the higher valuation. At the time of entry, this witness did not know or have any reason to suspect that there was in fact a higher price in Canada for the bearings than the price declared upon entry.

George Beauvol, the appraiser of merchandise at Albany, N. Y., testified on behalf of the respondent. He stated that he was the examiner of the merchandise in question; that when he received the consular invoice on this particular entry he wrote to petitioner pointing out the respects in which the invoice was deficient. He particularly mentioned that the fact that column 11 of the consular invoice showed foreign value expressed in United States dollars indicated that not too

much thought had been given to the preparation of the invoice so far as that column was concerned; that he requested the importer to ascertain if there was a higher foreign value; that two amendments were made to the original entry, the first of which segregated items which were of American manufacture, entitled to free entry, the second of which corrected the number of pieces covered by the entry; that about 9 months after the entry was made, he received from the Customs Information Exchange a copy of SKF's catalog, together with the discount sheet, which indicated that the foreign values were higher than the entered values; that he contacted McLoughlin and informed him that the entry prices were entirely out of line; and that McLoughlin said that he knew that the Canadian General Electric Co., Limited, got a better price and a better discount than the ordinary purchaser in Canada. Exactly when McLoughlin first learned of the discounts received by the Canadian General Electric Co., Limited, was not established, but it was only after he told McLoughlin in September of 1946 that there was a higher price in Canada that the company admitted its mistake. Mr. Beauvol stated specifically that in his opinion he believed that petitioner intended to defraud the revenues of the United States; that this opinion was based upon the fact that there had been instances in the past when he was unable to get information from the petitioner until he specifically requested it; that there were instances where the General Electric Company "liquidated damages ranging from $300 to $1800"; but that McLoughlin was not involved in any of those transactions.

Section 489 of the Tariff Act of 1930, under which this application is made, provides in part as follows:

* * * Such additional duties shall not be construed to be penal and shall not be remitted nor payment thereof in any way avoided, except in the case of a clerical error, upon the order of the Secretary of the Treasury, or in any case upon the finding of the United States Customs Court, upon a petition filed at any time after final appraisement and before the expiration of sixty days after liquidation and supported by satisfactory evidence under such rules as the court may prescribe, that the entry of the merchandise at a less value than that returned upon final appraisement was without any intention of defraud the revenue of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise. If the appraised value of any merchandise exceeds the value declared in the entry by more than 100 per centum, such entry shall be presumptively fraudulent, and the collector shall seize the whole case or package containing such merchandise and proceed as in case of forfeiture for violation of the customs laws; and in any legal proceeding other than a criminal prosecution that may result from such seizure, the undervaluation as shown by the appraisal shall be presumptive evidence of fraud, and the burden of proof shall be on the claimant to rebut the same, and forfeiture shall be adjudged unless he rebuts such presumption of fraud by sufficient evidence.

As the final appraised values of the instant merchandise exceeded the entered values by more than 100 per centum, there is a statutory presumption of fraud, and the burden of proof was upon petitioner to

rebut such presumption. *Stan Newcomb and Barbara Todd* v. *United States*, 37 C. C. P. A. (Customs) 18, C. A. D. 413. We are of opinion that petitioner has not sustained that burden.

In the case of *Finsilver, Still & Moss* v. *United States*, 13 Ct. Cust. Appls. 332, T. D. 41250, it was stated that:

* * * In remission cases the importer is not the insurer of the correctness of the value of his goods, neither is he held to the strict rule that he must positively know their value, but he certainly can not be said to be acting in good faith if he declares an incorrect value for his goods, to be acted upon by the appraiser, when, by reasonable inquiry, he could have been advised that his statement was false. And by reasonable inquiry we do not mean that in every instance the importer is required to make inquiries before declaring what he believes to be the value of his goods, but if there is any circumstance which would put a reasonably prudent person, under similar circumstances, upon inquiry, then it is his duty to make such inquiry. The importers, in this instance, may have had no knowledge that their importation was worth more on the date of shipment than it was on the date of purchase, but they represented that they *did* know its value. We think there were circumstances calculated to put them upon their inquiry, and that reasonable inquiry would have developed the inaccuracy of the stated value. * * * [Italics quoted.]

We are of opinion that there were many circumstances in the instant case calculated to put a reasonably prudent business man upon inquiry and many respects in which the importer failed to meet the obligations of an entrant of merchandise.

While it is true that the person acting on behalf of the General Electric Company believed that the values at which he entered the merchandise were correct, he admittedly made no effort to ascertain what the true values were. He represented that the entered values were correct at a time when he had no knowledge whatsoever of Canadian market values for home consumption or for export. He relied upon the fact that the prices paid for the Canadian bearings exceeded those the company customarily paid for domestic goods of the same kind, and hence did not question the prices listed in the invoice. However, he knew or should have known from even the perfunctory examination of the invoice, which he said he made, and from the letter which he received from the appraiser, that the values at which he was required to enter his merchandise were the values for home consumption or for export in Canada and not in the United States. If he had any doubt as to the meaning of the letter which he received from the appraiser, he could easily have obtained a clarification thereof by communicating with him. This he did not do. He merely forwarded the letter to petitioner's Canadian affiliate and apparently was advised that they did not receive any "special deal" from the Canadian manufacturer.

Some time later, exactly when was not brought out in the record, he actually was informed that Canadian General Electric Co., Limited, had received greater discounts than other Canadian purchasers

of steel bearings, and hence that prices for home consumption in Canada were in excess of those paid by General Electric Co., Limited, of Canada. Nevertheless, though in possession of information which clearly established that the entered values were erroneous, he omitted to bring such information to the attention of the appraiser and did not attempt to amend his entry. Instead, he waited until the appraiser obtained knowledge of the true values from an independent source, before revealing that he, too, knew that Canadian General Electric Co., Limited, paid a lower price than other purchasers in Canada. Under the circumstances, it cannot be said that there was such a complete and candid disclosure of all the facts in the case as would justify the granting of the petition.

Our appellate court in the case of *R. W. Gresham* v. *United States,* 27 C. C. P. A. (Customs) 106, C. A. D. 70, stated:

It is not enough in a case of this character for a petitioner, under circumstances like those at bar, to disclose a lack of knowledge of the true value of the merchandise in order to meet his burden and make satisfactory proof in the proceeding authorized by the statute involved. *Lowe Co.* v. *United States*, 15 Ct. Cust. Appls. 418, T. D. 42590. We have said that one law cannot be made for the ignorant and another for those who are versed in the law. *Schrikker* v. *United States*, 13 Ct. Cust. Appls. 562; T. D. 41433, in which *Barlow* v. *United States*, 7 Pet. 404, is cited. Moreover, it is clear that Congress by the enactment of said section 489 and its predecessor did not intend to suggest that there was a changed attitude toward the wholesome effect of the additional duty provision in protecting the revenues, nor did it intend to provide an easy means for the circumvention of the statute. *Finsilver, Still & Moss* v. *United States*, 13 Ct. Cust. Appls. 332, T. D. 41250.

It has frequently been pointed out that the entrant of merchandise owes a duty to inform himself as to the correctness of his representations as to the value of his merchandise and that a showing of indifference to its proper value does not meet the requirements of satisfactory proof under the statute.

Furthermore, there was the fact that the examiner had returned the submission sheet without any information as to value. In the case of *United States* v. *H. S. Dorf & Co. of Pa., Inc.*, 36 C. C. P. A. (Customs) 29, C. A. D. 392, this was considered to be of significance, the court stating:

* * * where a submission sheet has been returned with no information, that fact is sufficient to put a customhouse broker on notice so as to require that he seek further information as to value before making entry. * * *

The law in this respect was set forth at length in *United States* v. *Aug. F. Stauff & Co.*, 25 C. C. P. A. (Customs) 215, T. D. 49306, wherein the court stated:

Stauff also testified that his company sought information of the appraiser's office, and there appears of record, as Exhibit 1, a communication dated October 24, 1933, which shows such a request. It was returned immediately marked "No information JVD." It later developed that the initials were those of an examiner in the appraiser's office.

It is well settled that it is not required of the appraiser that he give information to a prospective entryman. *Mitsubishi Shoji Kaisha (Ltd.)* v. *United States*, 19 C. C. P. A. (Customs) 91, T. D. 45227. In that case it was not only pointed out that no duty rested upon the customs officials in this respect, but it was stated that even where information might be given it was not binding upon the officials, and we added, "nor can such information be relied upon to obviate the duty of the importer to ascertain and enter at the true value."

We agree with Government counsel that when the request addressed to the appraiser's office was returned marked "No information" it should have placed appellee on notice, and prudence would have required that before making the entry, which was done the following day, further and more particular information as to value should have been sought.

Petitioner employed a customhouse broker to make entry herein. Although the broker personally presented the submission sheet to the appraiser, and received it from him with the notation that that customs official had no information as to value, he made no further inquiry of the importer or of any one else, but forthwith, and on the very same day, made entry of the merchandise at the invoice prices. A broker who has had any experience whatsoever in entering merchandise, and the record herein does not indicate that this broker was a novice in the field, should have made some effort to ascertain whether the values contained in the consular invoice were correct. The omission so to act on the part of the broker in this case is a dereliction which, in the absence of any extenuating circumstances, cannot be condoned.

Thereafter, the importer received a communication which in part and in effect questioned the values quoted as the current prices for home consumption or for export. McLoughlin thought that this portion of the communication was ambiguous, but failed to request an explanation, although he wrote to the appraiser about other matters covered by said letter. He forwarded the appraiser's letter to the Canadian affiliate of petitioner, and although he testified that he was advised that they received no "special deal" in Canada, he was unable to state whether such advice came by way of letter or telephone. In any event, no letter to that effect was produced, nor did McLoughlin convey the information received to the appraiser.

In view of the foregoing considerations and based upon the entire record, we are not satisfied that the entry of the merchandise at less than its final appraised value was without any intention to defraud the revenue of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise within the meaning of said section 489. The instant petition for the remission of additional duties is, therefore, denied.

Judgment will issue accordingly.