United States *v.* D. Lisner & Co., Inc. (No. 4638)[1]

[1] C. A. D. 443.

United States Court of Customs and Patent Appeals, January 16, 1951

*David N. Edelstein*, Assistant Attorney General (*Joseph F. Donohue* and *Richard F. Weeks*, special attorneys, of counsel), for the United States.

*John D. Rode* for appellee.

[Oral argument December 7, 1950, by Mr. Donohue and Mr. Rode]

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, JOHNSON, and WORLEY, Associate Judges

GARRETT, Chief Judge, delivered the opinion of the court:

This is an appeal from the judgment of the Third Division of the United States Customs Court entered in conformity with its decision, from which Cline, J., dissented, rendered December 20, 1949 (Abstract 53840, 24 Cust. Ct. —), sustaining the petition of appellee for the remission of additional duties assessed on two cases of imitation pearl beads imported from Spain and entered at the port of New York, N. Y., August 23, 1939. Apparently, the merchandise was shipped from Spain about July 15, 1939.

The entry was finally liquidated January 6, 1948.

The brief before us on behalf of the Government states:

\* \* \* Such beads pay duty under paragraph 1503 of the Tariff Act as follows: if valued at not more than ¼ of one cent per inch, 60 per centum *ad valorem* (reduced by T. D. 51898 to 30%); if valued at more than ¼ of one cent per inch and not more than one cent per inch, ½ of one cent per inch plus 60 per centum *ad valorem;* and at various increased specific and ad valorem rates according to the value. The beads were invoiced and entered at less than ¼ of one cent per inch, and were appraised at foreign value at a very much higher unit price. The appraised value was more than 100% in excess of the entered value, which subjected the goods to forfeiture. The Bureau of Customs remitted the forfeiture and the merchandise was exported.

The following is from the preliminary statement of counsel for appellee, made at the beginning of the trial:

These two cases were entered as a test shipment, to determine whether or not such imitation pearl beads from Spain could be economically imported and pay duty at less than a quarter of a cent an inch.

The statute here involved is section 489 of the Tariff Act of 1930, the pertinent phraseology of which reads:

SEC. 489.  ADDITIONAL DUTIES.

If the final appraised value of any article of imported merchandise which is subject to an ad valorem rate of duty or to a duty based upon or regulated in any manner by the value thereof shall exceed the entered value, there shall be levied, collected, and paid, in addition to the duties imposed by law on such merchandise, an additional duty of 1 per centum of the total final appraised value thereof for each 1 per centum that such final appraised value exceeds the value declared in the entry. * * * Such additional duties shall not be construed to be penal and shall not be remitted nor payment thereof in any way avoided, except in the case of a clerical error, upon the order of the Secretary of the Treasury, or in any case upon the finding of the United States Customs Court, upon a petition filed at any time after final appraisement and before the expiration of sixty days after liquidation and supported by satisfactory evidence under such rules as the court may prescribe, that the entry of the merchandise at a less value than that returned upon final appraisement was without any intention to defraud the revenue of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise. If the appraised value of any merchandise exceeds the value declared in the entry by more than 100 per centum, such entry shall be presumtively fraudulent, and the collector shall seize the whole case or package containing such merchandise and proceed as in case of forfeiture for violation of the customs laws; and in any legal proceeding other than a criminal prosecution that may result from such seizure, the undervaluation as shown by the appraisal shall be presumptive evidence of fraud, and the burden of proof shall be on the claimant to rebut the same, and forfeiture shall be adjudged unless he rebuts such presumption of fraud by sufficient evidence.

It appears that appellee had been purchasing imitation pearl beads of the character here involved from the same exporter in Spain for many years prior to 1939; that there had been controversies with respect to the proper appraisal of such beads for duty purposes, and that, at the very time the testimony in this case was being taken before the Customs Court, that is, on February 10, 1949, the question of the proper dutiable value of at least some of those prior shipments was still pending before the Customs Court.

It may be said just here that the only witness called on behalf of appellee which, of course, had the burden of establishing its right to remission under section 489, *supra*, was one Jack Abramson who had been associated with appellee for about 28 years—whether as a member of the company or merely as an employee does not appear. He does not appear to have had anything to do with making the entry in the case. Nor is it shown that he personally made any inquiries in the effort to ascertain the actual dutiable value of the merchandise. He stated that he believed "this particular transaction" was "handled" by a Mr. Kitley who was connected in some capacity with appellee and that he thought Kitley had "checked with the market of supply, the manufacturers," as to value and "also found that the same price was being quoted through other houses in the trade."

Kitley himself seems to have been available as a witness, but was not called.

In view of the fact that some importations of similar beads were made under the Tariff Act of 1930 prior to that here involved and that the question of the dutiable value of some at least of such prior importations was involved in reappraisement litigation at the very time the testimony of Abramson was being taken in this case, we confess that we do not understand just why the involved importation should be referred to as a test case. That, however, would not seem to be material, because, as stated by the dissenting judge, "While it is claimed that the merchandise was imported in order to make a test case, such a test was never made since the merchandise was exported."

Inasmuch as the additional duties assessed upon the merchandise amounted to an advance in dutiable value of more than 100 per centum over the entered value, the original entry, by the express terms of section 489, *supra*, became presumptively fraudulent and the collector was required to seize the merchandise and proceed as in case of forfeiture for violation of the customs laws.

It appears from official papers on file in the case along with the entry papers that the merchandise was seized July 23, 1942, and that forfeiture was remitted by the Bureau of Customs (acting, we assume, for the Secretary of the Treasury under section 618 of the Tariff Act of 1930) "upon exportation thereof under Customs supervision and payment of additional duties accruing thereon." It is observed that the merchandise was released from the seizure room for export on November 5, 1942, after appellee had paid or deposited the additional duties, and that appellee's appeal for a reappraisement was abandoned and dismissed January 3, 1947.

The reasons for remitting the forfeiture in the case do not appear to have been made of record and we are not here concerned with that action. In his preliminary statement made at the beginning of the trial, counsel for appellee, referring to the remission of forfeiture by the Bureau of Customs and the exportation of the beads under customs custody, stated to the trial court:

That left the question of duty a moot question, and consequently, the appeal to reappraisement was abandoned, because since the goods were exported, there wasn't any duty anyway. *Of course, the exportation did not wipe out or remit the additional duties for the valuation, which is what we are concerned with this morning* [Italics supplied.]

(For an interesting discussion of the differences in the authority of the Secretary of the Treasury under the respective sections 489 and 618 see the decision written for this court in 1926 by the late Associate Judge Charles S. Hatfield in the case of *Forbriger & Co.* v. *United States*, 13 Ct. Cust. Appls. 574, T. D. 41435, 49 Treas. Dec. 466.)

It will be recalled by those familiar with the history of customs legislation that prior to the enactment of the Tariff Act of 1922 (as recited in this court's decision written by the late Associate Judge Orion N. Barber in 1925 in the case of *Klein, Messner Co.* v. *United States*, 13 Ct. Cust. Appls. 273, 277, T. D. 41212, 48 Treas. Dec. 421) "an importer could obtain no relief from the assessment of additional duties except in cases of manifest clerical error."

As pointed out in the brief for the Government in the instant case, we enter upon its consideration with the fact staring us in the face that the entry originally made by the importer was presumptively fraudulent by the terms of the statute itself, and in such cases the court must be governed by the statutory provision reading:

* * * in any legal proceeding other than a criminal prosecution that may result from such seizure, the undervaluation as shown by the appraisal shall be presumptive evidence of fraud, and the burden of proof shall be on the claimant to rebut the same, and forfeiture shall be adjudged unless he rebuts such presumption of fraud by sufficient evidence.

The following from the brief on behalf of the Government is deemed apropos:

This Court said in *Gresham* v. *United States*, 27 C. C. P. A. (Customs) 106 at 111:

It is not enough in a case of this character for a petitioner, under circumstances like those at bar, to disclose a lack of knowledge of the true value of the merchandise in order to meet his burden and make satisfactory proof in the proceeding authorized by the statute involved. *Lowe Co.* v. *United States*, 15 Ct. Cust. Appls. 418, T. D. 42590. We have said that one law cannot be made for the ignorant and another for those who are versed in the law. *Schrikker* v. *United States*, 13 Ct. Cust. Appls. 562; T. D. 41433, in which *Barlow* v. *United States*, 7 Pet. 404, is cited. Moreover, it is clear that Congress by the enactment of said section 489 and its predecessor did not intend to suggest that there was a changed attitude toward the wholesome effect of the additional duty provision in protecting the revenues, nor did it intend to provide an easy means for the circumvention of the statute. *Finsilver, Still & Moss* v. *United States*, 13 Ct. Cust. Appls. 332, T. D. 41250.

*It has frequently been pointed out that the entrant of merchandise owes a duty to inform himself as to the correctness of his representations as to the value of his merchandise and that a showing of indifference to its proper value does not meet the requirements of satisfactory proof under the statute.* [Italics supplied.]

It may not be overlooked that the burden of proving a negative is placed squarely upon the importer in cases such as this. The Government does not have the burden of proving that there was fraud on the part of the importer. The statute requires that the importer shall overcome the presumption of fraud which the statute itself declares arises from an undervaluation by the importer of more than 100 per centum.

It is apprehended that very few importers could be found who would be willing to admit under oath that they deliberately made an entry with the intention "to defraud the revenue of the United States

or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise."

Even in cases where the undervaluation is less than 100 per centum, the importer must produce "*satisfactory evidence*" [italics supplied] that no such intention existed. Certainly the requirement of such "satisfactory evidence" is even stronger in cases where the undervaluation is in excess of 100 per centum. It is so well settled by a long line of judicial decisions that a mere statement that there was no intention to defraud does not constitute sufficient or satisfactory evidence of that fact that no citation of authority supporting the rule appears necessary.

In the final analysis that is practically all the evidence we have in this case.

We, therefore, are unable to agree with the assertion in the brief of learned counsel for appellee that in this case "the importer did not merely rely upon his invoice price but took affirmative steps in every possible direction to ascertain the correct value of his goods."

The majority opinion itself after fairly paraphrasing the testimony states:

While this testimony is not entirely satisfactory in that it seems a little indefinite and the witness admitted that he did not handle this particular transaction, nevertheless, he was conversant with the situation and it appears that the question of the value of these beads depended upon whether the price appearing on the invoice and entry was a "freely offered" price within the meaning of the statute.

The opinion of the dissenting judge also fairly summarizes the testimony in the case and, in our view, accurately states the applicable law in the following:

Jack Abramson, who testified on behalf of the petitioner, stated that he *seemed* to know something about the shipment, but admitted later that he did not handle this transaction. When asked as to what inquiry his company made as to proper market value, he stated, "We *seemed* to have heard that the price offered to us at $3.90 was *more or less* the price offered to all, or *most all* other people in the trade." He *believed* their attorney tried to get some information from the customs in regard to value, but did not get any different information. He stated on direct examination that he *believed* his office discussed the case with customs officials, but admitted later that he did not know whether he himself did; that it might have been another gentleman. As to ascertaining value, he said on cross-examination that his firm checked with the market of supply, the manufacturers, and also found that the same price was being quoted through other houses in the trade. He then stated that a Mr. Kitley in his firm handled the transaction but that he had been out of town and he (the witness) did not know whether he was in the office that day. [Italics quoted.]

Since there was an advance of more than 100 per centum over the entered value, there was a presumption of fraud, and the burden of proof was on the claimant to rebut the same. (Tariff Act of 1930, section 489). The issue in this case is the good faith of the entrant and lack of knowledge of the true value of the merchandise cannot be accepted as a reason for the remission of additional duties. *United States* v. *Dorf & Co. of Pa., Inc.*, 36 C. C. P. A. (Customs) 29, C. A. D. 392 (rehearing denied). The evidence in this case does not establish that the importer

believed in its values and intended to make a test case. According to the testimony, the entered value was based on what the company seemed to have heard was more or less the price offered to all or most people. Under such circumstances, a reasonable and prudent man would have questioned the values and sought information as to their correctness. *Wolf & Co.* v. *United States*, 13 Ct. Cust. Appls. 589, T. D. 41453; *Finsilver, Still & Moss* v. *United States*, 13 Ct. Cust. Appls. 332, T. D. 41250; *R. W. Gresham* v. *United States*, 27 C. C. P. A. (Customs) 106, C. A. D. 70. In *Kachurin Drug Co.* v. *United States*, 26 C. C. P. A. (Customs) 356, C. A. D. 41, the court said:

The question presented here and to the trial court is not to be considered in the form in which the appellant states it. It is not a question as to whether the record affirmatively shows that appellant entered the goods in bad faith, but the question is whether or not it has met its burden of proving to the trial court that in making the entries such good faith was exercised as is required by the statute.

The evidence in this case does not meet this test. Accordingly, the petition should be denied.

We have examined the several cases cited in the brief for appellee, but do not find them controlling here. Each case of remission of necessity must be determined upon the record presented in such case.

For the reasons stated, the judgment of the Customs Court is *reversed*.