No. 56348.—Pacific Customs Brokerage Company v. United States, petition 6791–R (St. Albans).

Rao, Judge:    This is a petition filed pursuant to the provisions of section 489 of the Tariff Act of 1930 for the remission of additional duties assessed by reason of an undervaluation, on entry, of an importation of live chinchillas.

Eleven animals were included in the entry filed by petitioner as nominal consignee.    Five of these, so-called grade chinchillas, were appraised as entered at a value of $100 each, and are not involved in this proceeding.    The remaining six consist of what were described in the pro forma and consular invoices as purebred chinchillas, three male and three female, of a total value of $2,000, four being priced at $350 each and two at $300 each.

The six involved chinchillas were entered free of duty under paragraph 1606 of the Tariff Act of 1930, as animals for breeding purposes.    The appraiser accepted the entered value of $2,000 for the said animals, but advisorily returned the importation as dutiable under paragraph 715 of said act, as modified by the General Agreement on Tariffs and Trade (T. D. 51802), at the rate of 7½ per centum ad valorem, as live animals, not specially provided for.

Upon the collector's appeal for reappraisement, the parties stipulated the value of the chinchillas as $900 per pair, and the court held the value of the merchandise to be as stipulated. *United States* v. *Pacific Customs Brokerage Co.*, 24 Cust. Ct. 498, Reap. Dec. 7766. By reason of the fact that the final appraised value exceeded the entered value, the additional duties here sought to be remitted were assessed.

Two witnesses testified in support of the petition. These were Gordon W. McKenny, a customs broker, and member of the firm of Pacific Customs Brokerage Company, the nominal consignee of the instant importation, and Arnold McMaster Feast, co-owner of the Yamaska Chinchilla Ranch of Cowansville, Quebec, shipper of the chinchillas in question. No evidence was introduced by respondent.

McKenny testified that in December 1948, his company received a request from the shipper to arrange for the importation and entry of certain chinchillas which had been purchased by one Eugene Desjardin of Concord, Vt., and that, in all of his subsequent activities in connection therewith, he acted as agent for the shipper and had no negotiations with the ultimate consignee. Being advised that the chinchillas in question were purebred animals, imported solely for breeding purposes, he was of opinion that they could be entered free of duty, pursuant to the provisions of paragraph 1606 of the Tariff Act of 1930. He so informed the shipper and made entry accordingly. Later, however, he learned that the Department of Agriculture did not recognize purebred chinchillas and that, therefore, the animals were dutiable.

Before making the entry, the witness requested and obtained from the shipper information as to value, having specially inquired as to the purchase price of the animals, and from that information, namely, that they had a value of $350 or $300 each, he prepared a *pro forma* invoice.

McKenny stated further that he had previously handled only one importation of some baby chinchillas; that at the time of entry, he did not know of any particular market for chinchillas; and that he had no reason to believe that the entered values were not fair. He specifically averred that there was no intent on his part or the part of his company to defraud the revenue of the United States or to conceal any facts from the appraiser.

Feast testified that he commenced raising chinchillas in December 1945, and that the Yamaska Chinchilla Ranch was established in September 1947. Previous to the instant shipment, the ranch had sent to the United States only two small baby chinchillas, pursuant to a transaction handled by his partner. This was the first exportation with which he personally was concerned. He learned from his broker that the animals could be admitted into the United States, duty-free, and upon request therefor gave a valuation for the entire shipment, including the five animals not here involved of $2,500, which represented the American funds the ranch was to receive from Eugene Desjardin, after the latter obtained possession of the animals.

Feast stated that he did not think the price of the animals was particularly material, as they were to be entered duty-free. It was his belief that the mentioned price figure was of interest only to the Canadian Foreign Exchange Board, which requires a strict account of all American funds received in Canada. Actually, he received for the animals $2,500 in American money and $400 in Canadian funds, but as he believed that the figures furnished by him were solely for the Canadian Foreign Exchange Board, he did not think it necessary to mention the $400 in Canadian funds, which he was to receive from the importer. Therefore, when the broker asked him for the purchase price, he supplied the figures which the broker used on entry, although at the time he knew that the price was $900 per pair for the purebred animals. In this connection, the witness testified, on cross-examination, as follows:

X Q. Now, at the time you were making the arrangements with Mr. McKenny, didn't you and he—didn't he ask you what the purchase price was?—A. Yes, I believe he did.

X Q. And you gave him the figures that he entered at?—A. Yes.

X Q. You didn't tell him at that time that the purchase price was $2,700 for the 3 pairs, did you?—A. That is correct, I did not.

X Q. And you knew, of course, at that time that that was so?—A. Yes, I did very definitely. I might qualify that by stating that my belief that Mr. McKenny's interest was solely revolving around American funds.

X Q. Did he say anything to you about American funds?—A. No, he did not.

X Q. He asked you what the purchase price was?—A. That's right.

X Q. And, all you gave him was the information that he entered at?—A. That's right.

After the animals had been entered, and while the collector's appeal for reappraisement was pending, Feast was visited by a representative of the Treasury Department to whom he gave all of his books, which included all of the sales the ranch had made in Canada. He also furnished whatever information the Treasury agent requested.

It further appears from the testimony of the witness Feast that when the six animals were sold, verbal assurances were given that the animals would produce, and if they did not, restitution would be made. He subsequently learned that the animals did not produce, and therefore sent some baby chinchillas to make good on the guarantee.

Feast also testified that he had no intention to defraud the revenues of the United States, conceal or misrepresent the facts of the case, or deceive the appraiser as to the value of the merchandise, and that the undervaluation "was largely due through ignorance."

Section 489 of the Tariff Act of 1930 authorizes the remission of additional duties—

* * * upon a petition filed at any time after final appraisement and before the expiration of sixty days after liquidation and supported by satisfactory evidence under such rules as the court may prescribe, that the entry of the merchandise at a less value than that returned upon final appraisement was without any intention to defraud the revenue of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise. * * *

In the case of Fish v. United States, 12 Ct. Cust. Appls. 307, T. D. 40315, the term "satisfactory evidence" which thus appears in said section was defined as "that amount of proof which ordinarily satisfies an unprejudiced mind beyond reasonable doubt." By express legislative prescription, the burden of producing such satisfactory evidence is placed upon the person filing the petition. But when and if the petitioner has convinced the judicial mind that the undervaluation upon entry was without any intention to defraud the revenues of the United States, the petition ought to be granted.

In the instant case, we are mindful of the fact that both the petitioner, as agent, and the shipper, as principal, the intentions of the latter being, of course, ascribable to the former, were of the sincere and honest belief that purebred chinchillas, imported for breeding purposes, could be entered free of duty under the provisions of paragraph 1606 of the Tariff Act of 1930. Concrete expression of that belief lies not only in the testimonial evidence of the two witnesses for petitioner, but also in the consumption entry itself, and in an affidavit and a statement which are part of the official papers before us, although not specifically in evidence. Customs Form 3327 is a declaration attested by the ultimate consignee to the effect that the animals here involved were imported by him specially for breeding purposes. Form IQ-29, issued by the United States Department of Agriculture, is a declaration of similar import by petitioner.

It seems obvious to us that the parties to this transaction, being of the honest belief that their importation was not dutiable, could have had no intent to deceive the appraiser or to defraud the revenues of the United States by placing a false or incorrect value on the items imported. No conceivable advantage would accrue to them by a failure to report accurately and conscientiously the true value of the animals. If the chinchillas had been passed as entered, statements as to their value would have been to all intents and purposes immaterial, and the appraiser could not have been misled. Nor would additional duties for undervaluation have been assessed. The circumstances that they were returned as dutiable, made the value placed upon them in the entry a pertinent factor.

Insofar as petitioner was concerned, there was no reasonable basis for an assumption on its part that the values transmitted by the shipper were erroneous. A request had been made for the purchase price and the presumably correct figures were furnished. These could not have been checked against any other importations as there was then practically no market in live chinchillas. There being no circumstance to put petitioner on notice, we cannot ascribe an imprudence in its accepting the shipper's statements and entering the animals accordingly.

With respect to the shipper, there is the candid admission of one of the co-owners that he knew the purchase price actually received by him exceeded the figure which he gave to the broker. His explanation of the discrepancy, under all of the circumstances in the case at bar, seems entirely reasonable and straightforward. Bearing in mind that he believed the chinchillas would not be subject to duty upon importation into the United States, he assumed that the purchase price of the animals was not particularly material and that he was supplying information which would be primarily of interest to the Canadian Foreign Exchange Board, namely, the purchase price in terms of American dollars.

It is true that ignorance of our customs laws does not serve as an excuse for a failure to comply with the requirements thereof. See *Schrikker* v. *United States*, 13 Ct. Cust. Appls. 562, T. D. 41433, wherein the court stated:

\* \* \* The principle of law announced in the maxim *ignorantia legis neminem excusat*, applies in both civil and criminal matters and is sanctioned by centuries of experience. Anyone dealing with the United States customs authorities is presumed to have full knowledge of all laws and regulations applicable thereto. He is presumed to know, and, in contemplation of law, does know that it is his duty to enter his goods at the value prescribed by the statute, or else, in event of his failure to do so, to suffer such penalties or exactions as the law prescribes.

To hold that an importer who undervalues his goods can obtain the benefits of remission of additional duties levied on account of the undervaluation by showing that he was ignorant of our laws, would result in making one law for ignorant importers and another law for those who had acquainted themselves with their statutory rights and duties. In the case at bar, the importer, regardless of whether he actually knew the provision of the statute is presumed to know that it was his duty (as applicable to the provision of section 489), to enter his goods at the foreign value or the export value whichever was the higher. If he should contend that it was his understanding of the law that the selling price of goods imported into this country was always the foreign value, it would not be sufficient, under the requirements of section 489, to entitle him to avoid the additional duties provided for. He can not be heard to say, "I did not know the requirements of the law, and because of my lack of knowledge I, therefore, did not intend, by not complying with it, to defraud, or misrepresent the facts."

We believe, however, that in this instance there is no attempt to spell out a lack of intention to defraud from a lack of knowledge of the requirements of the law. The ignorance of petitioner's principal of the provisions of the customs laws of the United States resulted directly and undeniably in the undervaluation of the importation with which we are here concerned. But the lack of intention to defraud derives from the additional circumstance that the parties in good faith expected that the involved chinchillas were not dutiable. As we have heretofore

stated, we cannot ascribe an intent to deceive the appraiser as to the value of merchandise which it is honestly thought is entitled to free entry.

The trial of this case was held at St. Albans, Vt., before the writer of this opinion who had an opportunity to observe the witnesses called by the petitioner and who was favorably impressed by their demeanor and integrity.

Based upon the foregoing considerations, the court is satisfied that the entry of the instant importation at a less value than that returned upon final appraisement was without any intention to defraud the revenues of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise. The petition is, therefore, granted.

Judgment will be entered accordingly.