(C. D. 1209)

CHARLES T. WILSON CO., INC. v. UNITED STATES

## United States Customs Court, First Division

(Decided February 7, 1950)

*Sharretts & Hillis* (*Edward P. Sharretts* and *Howard C. Carter* of counsel) for the petitioner.
*David N. Edelstein*, Assistant Attorney General (*Richard H. Welsh* and *Samuel D. Spector*, special attorneys), for the respondent.

Before OLIVER, COLE, and MOLLISON, Judges

COLE, Judge: A shipment of onion powder from Mexico was entered through Laredo, Tex., at 4 pesos per kilo, packed, less non-dutiable charges, the purchase price set forth in a contract under which the importation was made. Appraisement was at 4.50 pesos per kilo, packed, less nondutiable charges, which was the price for identical merchandise in a subsequent contract executed between the importer (petitioner) and the Mexican manufacturer of the merchandise in question. Additional duties accrued by reason of the appraiser's advance over the entered value, and to obtain remission of such duties, petitioner, invoking the provisions of section 489 of the Tariff Act of 1930 (19 U. S. C. §1489), has brought the present case before us.

Both parties introduced oral and documentary proof. In addition to the testimony of the customs broker who made the entry in question, its vice president who purchased the present merchandise, and its traffic manager who directed the movements of the shipment under consideration, the petitioner corporation offered a series of letters covering an exchange of correspondence between Sharretts & Hillis, counsel for petitioner (hereinafter referred to as "the attorneys") and the Bureau of Customs, dealing with the determination of the proper dutiable value of the onion powder in question. The Government's proof consists of oral testimony from the United States appraiser at the port of entry and documents concerning the contractual relations between the petitioner and Mexican manufacturer. The evidence is reviewed in narrative form, without outlining the testimony of each individual as he appeared, or analyzing, singly, the several papers received as exhibits in the case.

On October 2, 1943, petitioner entered into the first contract (petitioner's exhibit 10) with the Mexican manufacturer of the onion powder under consideration for the purchase of 6 metric tons at a price of 4 pesos per kilo, c. i. f. Laredo, Tex. Although provisions of the contract required that deliveries be completed by January 1944, they actually did not commence until February 1944. The importer (petitioner) made no objection to the delay, and accordingly accepted the merchandise.

A second contract (respondent's exhibit 8) was executed between the same parties on May 24, 1944, for an additional quantity of 10 metric tons of onion powder at a price of 4.50 pesos per kilo, c. i. f. Laredo, Tex.

The shipment in question—134 tins, each having a net weight of 24 pounds, 15 ounces—was the last one under the first contract. The merchandise was shipped by the Mexican manufacturer on April 25, 1944. It arrived at the Mexican border, in Nuevo Laredo, between May 2 and May 5, 1944, but was not formally entered for customs purposes until June 22, 1944, about 7 weeks later.

Edward H. Corrigan, customhouse broker, with 25 years' experience in Laredo, testified that the long lapse of time between the arrival of the shipment at the Mexican border and its official entry into the United States was due to abnormal conditions prevailing in the port of entry. At that time, during the war period, the port of Laredo was overburdened with traffic. The volume of business was not only four or five times greater than it had been for several years previous, but it was also more than the witness' business, as well as the customs and railroad organizations, was equipped to handle. The condition, coupled with additional restrictions and censorship that were in effect, caused considerable delay, if not temporary breakdowns, in forwarding merchandise through the port for customs purposes.

Before making the entry in question, the customhouse broker consulted the United States appraiser at Laredo, seeking advice on the question of value. He obtained none, but was told to assist in developing information on the subject. In entering the onion powder in question, he followed instructions received in a letter dated May 15, 1944 (respondent's exhibit 14), from petitioner's traffic manager, who testified that he directed entry to be made at 4 pesos per kilo, net, packed, because "that was the price for purchase contract, shipping documents in Mexico were made out at that price." Neither the customhouse broker nor the traffic manager had knowledge either of pending negitiations or of execution of the second contract (respondent's exhibit 8, *supra*) at the time of their activities leading up to the entry under consideration.

Entry was made, as heretofore stated, on June 22, 1944, and 2 days later, on June 24, the appraiser notified the collector and the importer (petitioner) that appraisement was being withheld pending an investigation in the foreign market. On October 8, 1945, the appraiser advised the customhouse broker that the onion powder in question would be appraised at "4.50 pesos per kilo, plus packing costs of 3.357 pesos per 15 kilo tin—less freight charges to border and consular invoice fee" (petitioner's collective exhibit 3).

In November 1945, a month after the appraiser expressed his contemplated action, Lloyd Trafford, vice president of the petitioner corporation in New York, visited Laredo where he conferred with the appraiser and the customs broker. He told the appraiser his company seldom had anything to do with merchandise subject to an ad valorem rate of duty, and that his purpose in Laredo was to "show him [the appraiser] just what happened in the purchase of this onion powder." Petitioner's representative received no definite information on value, but was assured by the customs official that appraisement would be withheld and was advised to return to New York and "hire an attorney that handles matters of this sort." "The attorneys" were then consulted and there ensued an exchange of letters between them and the Bureau of Customs. Without detailing each communication, the developments disclosed thereby, so far as they are pertinent to the issue before us, are summarized.

In a letter under date of December 18, 1945, to the Commissioner of Customs (petitioner's collective exhibit 3), "the attorneys" disputed the appraiser's proposed value of 4.50 pesos per kilo, plus packing, less nondutiable charges, and argued that the tins used in packing the onion powder were the usual containers and therefore the appraiser "was in error in suggesting that the price of the tins be added to the packed prices of the merchandise." In reply thereto, the Bureau of Customs, through the chief of appraisers, under date of January 17, 1946 (petitioner's collective exhibit 4), conceded the correctness of "the attorneys'" contention, and, in stating that the cost of containers should not be added to the unit price, advised that the appraiser at Laredo would appraise "the importations of onion powder which were exported during the period from February 8 to May 23, 1944, inclusive, at Mexican pesos 4.00 per kilo, packed, less nondutiable charges, and at Mexican pesos 4.50 per kilo, packed, less nondutiable charges for shipments exported on and after May 24, 1944." "The attorneys'" letter of February 27, 1946 (petitioner's collective exhibit 5), advised the Commissioner of Customs of the importer's (petitioner's) acceptance of the appraiser's suggested amended valuation, and stated that the customs broker would be instructed to amend the entry in question accordingly.

The correspondence, just reviewed, tends to refute the appraiser's testimony to the effect that he obtained no information from petitioner concerning the value of the present merchandise. The discussion between "the attorneys" and customs officials, as outlined in their exchange of letters, reveals that the appraiser's original contemplated appraisement was an erroneous value which he changed upon advice from "the attorneys." In other words, the price finally adopted by the appraiser is the one virtually proposed by petitioner.

Furthermore, the appraiser's testimony that he had no knowledge of said correspondence is contradicted by the communication, petitioner's collective exhibit 15, showing that the Bureau of Customs, under date of March 6, 1946, had supplied the appraiser at Laredo with the information that the importer (petitioner) agreed with the proposed higher value and intended to make timely amendment to its entry.

"The attorneys," in a letter dated May 7, 1946 (petitioner's collective exhibit 1), instructed the customs broker to amend the entry under consideration in accordance with the foregoing acceptance of 4.50 pesos per kilo, packed, less nondutiable charges, as the proper dutiable value of the onion powder in question. The broker failed to do so because of the "rush of things" and "we didn't have time to do it." The broker's omission, while reflecting carelessness to some extent, is easily understandable in the light of his uncontradicted testimony explaining the confusion that prevailed in Laredo during the period under consideration when extremely congested conditions taxed the facilities of his organization beyond its capabilities. It is fair to say that if normal conditions had existed at Laredo when the shipment under consideration arrived at the Mexican border for customs entry into the United States, the invoice and entry price, being the purchase price and the only one prevailing at the time, would have been accepted without question and the merchandise so appraised.

*United States* v. *H. S. Dorf & Co. of Pa., Inc.*, 36 C. C. P. A. 29, C. A. D. 392, cited in Government counsel's brief, is distinguishable. It is comparable to the present situation only as it involved merchandise entered at the purchase price under a contract that was superseded by a later one carrying a higher price at the time of the importation under consideration. In this case, we find, unlike anything that existed in the *Dorf* case, *supra*, petitioner made a thorough and exhaustive inquiry, cooperating with customs officials, to determine dutiable value. The whole procedure—oral conferences as well as correspondence—followed by petitioner discloses a conscientious effort to meet the Government's requirements. The appraiser had given assurance that his official action would be withheld, and he knew, when he finally appraised the merchandise, of petitioner's willingness to accept the higher value and intention to make valid amendment agreeable thereto. That some of petitioner's activity occurred after entry, in no way detracts from the merit in its case. "It is, of course, true that the issue must be determined upon the question of intent at the time of entry, but, for the purpose of throwing light upon the matter of intent, the conduct of the petitioner in direct relation to the subject matter, before and subsequent to the entry, may be looked to." *United States* v. *Pennsylvania Salt Manufacturing Co.*, 26 C. C. P. A. 232, C. A. D. 22.

We heard this case at New York, where officials of the petitioner corporation testified, and therefore had an opportunity to observe their demeanor. The attitude of each was entirely favorable, both displaying a disposition to supply the court with a complete set of facts for a proper decision in the case. As stated in *General Dyestuff Corp.* v. *United States*, 3 Cust. Ct. 304, C. D. 261, cited in the "attorneys'" brief, "the history of this case discloses good faith on the part of the importer and it is our opinion that he is entitled to relief from the assessment of the additional duties."

It is only fair to say that petitioner and its broker were not as painstaking as they might have been, and their handling of this transaction was not entirely free from criticism. But their negligence or carelessness—if such is the term to apply—is not a bar, within the meaning of the statute, for remission of additional duties assessed under section 489, *supra*. In this connection, *United States* v. *Fish*, 268 U. S. 607, said:

* * * The issue * * * was whether the importer showed by his evidence that the entry of the merchandise at a less value than that returned upon final appraisement was without any intention to defraud the revenue of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise. The issue presented * * * was, "Has the importer sustained the negative in this regard?" Merely to find that the importer was careless is not a finding sufficient to justify * * * whether there should be a remission. Both the importer and the Government are entitled to a finding either that there was no intent to defraud or that the importer did not sustain his burden that there was no such intent.

The record before us, considered in conjunction with all the circumstances surrounding the entry and final appraisement on the onion powder in question, is satisfying that the entry of the merchandise at a less value than that found upon final appraisement was without intent to defraud the revenue of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise.

The petition is therefore granted and judgment will be rendered accordingly.