## (C. D. 1475)

### AIRPORT CLEARANCE SERVICE *v.* UNITED STATES

United States Customs Court, First Division

(Decided November 20, 1952)

*Sharretts, Hillis & Paley* (*Howard C. Carter* of counsel) for the petitioner.
*Charles J. Wagner*, Acting Assistant Attorney General (*Daniel I. Auster* and *John J. Antus*, special attorneys), for the respondent.

Before OLIVER and MOLLISON, Judges

OLIVER, Chief Judge:  This is a petition filed pursuant to the provisions of section 489 of the Tariff Act of 1930, seeking remission of additional duties which accrued by reason of the final appraised value exceeding the entered value of electrotype printing plates exported from Switzerland and entered at the port of New York.

Charles A. Emanuele, who, for the past 6 years, has been operating a customs brokerage business under the name of the Airport Clearance Service, the petitioner herein, supplied all of the testimony which supports the following summation.

Electrotype printing plates, the merchandise in question, vary in value, depending on whether they are originals or a later cut, the value decreasing with each subsequent impression.  Although the witness had had a few previous shipments of such plates, he, because of lack of experience, could not tell upon arrival of the present merchandise whether these plates were originals or a later cut.  In an effort to get the value of this shipment, the witness communicated with his principal, Frank J. Eberle Co., which company, in turn, was agent

for the Rodana Watch Co., Inc., the ultimate consignee. Neither of the said parties, however, furnished petitioner with any information until "after the appraisement had been completed."

The shipment in question arrived on January 1, 1951, and entry was made at the invoice value on January 5, 1951, at which time the merchandise was sent to the appraiser's stores where, in accordance with usual procedure, petitioner's principal followed up the merchandise and obtained possession thereof for final delivery to the ultimate consignee.

Sometime during the 4 days between arrival and entry of the merchandise—January 1 and January 5, respectively—petitioner submitted the invoice to the appraiser for information concerning value. Although the record contains nothing to show what action customs officials took pursuant to that request, there is positive testimony by petitioner, supported by the official papers, establishing that on February 7, 1951—that is, between the date of entry on January 5 and when appraisement was made on March 8, 1951—official notice was received from the appraiser, setting forth the value to be used on appraisement and giving petitioner 30 days during which to amend its entered value to meet the contemplated appraised value.

Petitioner received authority from the ultimate consignee to accept the appraiser's recommended value and amend the entry accordingly, but no action was taken, so in due course the higher value became effective, with consequent advance in excess of 100 per centum over the value stated on entry. Explaining his reason for failure to make timely amendment, the witness testified to the effect that he was away from business for a period of about 8 days and did not return until "the latter part of February" and that, during his absence, business activities became "jammed up" and he "didn't get around to amending the entry."

The short interruption in its normal course of business is not sufficient cause to relieve petitioner of its obligation herein. The witness admitted he returned "the latter part of February," which was during the period when timely amended entry could have been filed under the notice given by the appraiser. In other words, petitioner had ample opportunity to enter the present merchandise at the value found by the appraiser, and which value was also known by petitioner to be acceptable to the importer, or ultimate consignee.

Failure to make entry at the proper value, under the circumstances revealed herein, reflects an attitude of indifference on the part of petitioner and one wholly contrary to the requirements of satisfactory proof, essential under the statute for obtaining the relief sought herein. *Wolf & Co.* v. *United States*, 13 Ct. Cust. Appls. 589, T. D. 41453; *Finsilver, Still & Moss* v. *United States*, 13 Ct. Cust. Appls.

332, T. D. 41250; *Vietor & Achelis* v. *United States*, 14 Ct. Cust. Appls. 13, T. D. 41529.

The *Wolf & Co.* case, *supra*, set forth in the following language the burden of a petitioner in a case like this, invoking the provisions of section 489, *supra*:

\* \* \* First, He must show that in undervaluing his goods he was acting in entire good faith; second, that there were no facts or circumstances known to the petitioner when he made his entry which would cause a prudent and reasonable person to question the correctness of the values given by him; third, that he has made to the collector in making his entry, a full and candid disclosure of all the material facts in his possession bearing upon the value of the merchandise imported.

In the *Finsilver, Still & Moss* case, *supra*, the responsibility of a petitioner was explained in this way:

\* \* \* The statute does not impute fraud, or attempt to deceive, on the part of the importer unless the undervaluation is more than 100 per centum. The law, however, casts upon the petitioner asking for relief by remission of additional duties the burden of showing by satisfactory evidence, under such rules as the board [court] may prescribe, that he did not intend to defraud the revenue of the United States, or to conceal, or to misrepresent the facts in the case, or to deceive the appraiser as to the value of the merchandise.

In what way can he satisfy the mandate of the statute and thus maintain the burden placed upon him to produce satisfactory evidence that he did not have such intent? His statement in the evidence to the effect that he did not have such intent, standing alone, without corroborating facts or circumstances, being the issue to be determined by the court, certainly is not such proof as is required. And if the evidence he submits affirmatively shows that he represented a fact to be true, to wit, a certain value of his goods at the time of shipment, and at the time having no reasonable grounds for believing his representations to be true, or if it shows that his representations were made with reckless disregard of their truthfulness, it can not be said to corroborate his denial of intent but would have the opposite effect. Proof that a representation is made with the knowledge that reasonable inquiry might develop its untruthfulness would have the same tendency.

In the *Vietor & Achelis* case, *supra*, the court had this to say:

\* \* \* When an importer enters goods at a value the correctness of which he has no reasonable ground to believe, or when he states a value in reckless disregard of the truth, or when there are facts and circumstances which would put a reasonably prudent business man on inquiry as to whether the invoice value was not less than the foreign or export value of the goods in the principal markets of the country of exportation and he makes entry without such inquiry, then he represents as true that which he has no good reason to believe to be true. If that representation be false, he is legally chargeable with a misrepresentation of fact which precludes the relief accorded by section 489, Tariff Act of 1922 [now section 489, Tariff Act of 1930].

All of the foregoing citations point to the necessity of a petitioner showing, by satisfactory evidence, that his actions at the time of entry, which in this case includes the period when valid amendment could have been filed, were consistent with those to be expected of a

reasonably prudent man.  The present record falls far short of meeting such requirement.

Petitioner's testimony reveals a degree of carelessness and negligence sufficient to hold that the requirements of the statute, section 489, *supra*, have not been met, and that the relief sought herein should be denied.  Petitioner had a duty to enter the merchandise at the proper value, and that duty was not performed.  *United States* v. *Balfour, Guthrie & Co., Ltd.*, 39 C. C. P. A. (Customs) 199, C. A. D. 487.

In reaching this conclusion, we have not overlooked the added burden imposed on petitioner by the excessive advance by the appraiser of more than 100 per centum over the entered value, which, under the statute, makes the entry "presumptively fraudulent." *United States* v. *Aug. F. Stauff & Co.*, 25 C. C. P. A. (Customs) 215, T. D. 49306; *United States* v. *D. Lisner & Co., Inc.*, 38 C. C. P. A. (Customs) 79, C. A. D. 443.

Counsel for petitioner, in their brief, argue that "the facts of this case are substantially like the facts in *Charles T. Wilson Co. Inc.* v. *The United States*, 24 Cust. Ct. 66, C. D. 1209," which also involved a petition filed under the provisions of said section 489.  Careful analysis of the cited case discloses it to be clearly distinguishable from the present one.  There, the court found that "petitioner made a thorough and exhaustive inquiry, cooperating with customs officials, to determine dutiable value" and then stated: "The whole procedure—oral conferences as well as correspondence—followed by petitioner discloses a conscientious effort to meet the Government's requirements. The appraiser had given assurance that his official action would be withheld, and he knew, when he finally appraised the merchandise, of petitioner's willingness to accept the higher value and intention to make valid amendment agreeable thereto."  The same cannot be said of petitioner herein.  Instead, we find herein that petitioner pursued a course of conduct that was entirely negative.  Nothing was done after the appraiser had supplied the true value of the merchandise. With the exercise of due diligence, petitioner could very easily have shown the proper value on entry.  The witness' absence from business did not materially affect his right or ability to do so.

The petition is denied and judgment will be rendered accordingly.