**No. 60960.**—Famous Import Company v. United States, petition 7198–R (Dallas).

JOHNSON, Judge: This is a petition for the remission of additional duties assessed under section 489 of the Tariff Act of 1930 (prior to its amendment by the Customs Simplification Act of 1953), by reason of undervaluation of canned meat paste, exported from Canada on March 19, 1945, and entered at the port of Dallas on March 30, 1945.

Two witnesses testified at the trial: Rudolf W. Faehndrich, a cheese and food products importer, who, in 1945, was in charge of the petitioning company and in the employ of William Faehndrich, Inc., and Hadley S. King, customs attorney, connected with the firm representing petitioner. The following facts appear from their testimony:

The merchandise herein was entered at a value of $6.75 per case, Canadian currency, plus an 8 percent sales tax. The price of $6.75 per case was fixed by the Canadian price control authority and was that paid by the importer. Appraisement was made on June 17, 1949, at United States $10.50 per case net, less freight to Cleveland ($1.02 per 100 pounds, plus 7 percent surcharge), less duty at 20 percent. However, the liquidation based thereon was canceled because no notice of appraisement had been sent. Notice of appraisement was sent thereafter on May 16, 1950, and an appeal for reappraisement was taken. *Famous Import Co.* v. *United States*, 34 Cust. Ct. 463, Reap. Dec. 8397. This appeal was submitted for decision upon a stipulation of counsel to the effect that the issue and the merchandise were similar in all material respects to those involved in *R. J. Saunders & Co., Inc. (Perry H. Chipurnoi, Inc.)* v. *United States*, 42 C. C. P. A. (Customs) 55, C. A. D. 570, and it was held that foreign value was

the proper basis for the determination of the value of this merchandise and that such value was Canadian $7.92 per case, packing included.

The entry herein was one of a series of 11 entries of canned meat paste made by the petitioner or William Faehndrich, Inc. All of the entries were made at the port of New York, except the one before us, which was made at Dallas.

Prior to importing this type of merchandise into the United States, Mr. Faehndrich went to Canada to investigate values. He was told that there was one price under Canadian law for this merchandise, but that he (Faehndrich) would not have to pay the domestic sales tax. The witness understood that Canadian $6.75, without the export tax, was the home market value of the merchandise for the quantity in which petitioner was buying. He knew there were other prices for different quantities.

When petitioner first made entry of this type of merchandise, Mr. Faehndrich submitted the papers to his customs broker and instructed him to enter at the invoice value. When making the Dallas entry, he turned the papers over to his broker, who sent them to his correspondent in Texas. The value used was the same as that used on the New York entries, and no special instructions were given. He did not advise his broker of the Canadian $7.92 price, because he believed that was a retail price.

The first notice that Mr. Faehndrich had that the entered values were not acceptable to customs officials occurred when Mr. Zeiger, the examiner or appraiser, came to see him and stated that the merchandise should have been entered at a higher figure. The witness was uncertain as to when this visit took place, but believed it must have been after March 30, 1945, and after liquidation of four of the entries which had been appraised, as entered. According to the witness, Mr. Zeiger wanted him to recall those entries and increase the values, the reason being that a shipment had come into Chicago from Tropical Fruit Co. or Tropical Industries at a very high price and was resold in the United States at United States $10.50, c. i. f., duty paid. The witness explained to Mr. Zeiger that that merchandise had been purchased from Sans-O, the sales company associated with the manufacturer, under a private label, whereas the petitioner had bought the Sans-O label, without the big markup allowed under Canadian law on exports. He showed Mr. Zeiger private bills, invoices, and prices quoted in letters, and later turned over such papers to Mr. Sutcliffe, a customs agent.

After Mr. Zeiger's visit, Mr. Faehndrich contacted his attorneys, and it was decided that Mr. King should go to Canada to investigate the value of this merchandise. After conferring with the appraiser in New York and with Mr. Sutcliffe, Mr. King went to Canada in September 1945. He found that there were price controls in Canada, similar to our OPA price controls, and that the fixed price for this product to wholesalers was Canadian $6.75, not including the sales tax. There was another price fixed for retailers in the sum of Canadian $7.92, which included the sales tax. On his return, Mr. King informed Mr. Faehndrich that the price to wholesalers could not be used, since the merchandise was offered to retailers at a higher price, regardless of quantity, and that he should enter on the basis of the foreign value of Canadian $7.92 or that price, less the sales tax.

Since the appraiser was using a value of United States, $10.50, c. i. f., duty paid, the question was submitted to the Commissioner of Customs in an attempt to settle without litigation. The Bureau of Customs was told of the result of petitioner's investigation and was advised that petitioner was satisfied that the freely offered price in Canada was Canadian $7.92 and that it was willing to amend the entries to that figure. However, the Commissioner agreed with the higher value found by the appraiser. Therefore, a test case was brought involving this type of merchandise (*R. J. Saunders & Co., Inc. (Perry H. Chipurnoi, Inc.) v. United States, supra*), and the broker was instructed to amend the New York

entries up to the Government's claimed value. However, Mr. King, who had been instructed to take care of the situation, overlooked the Dallas entry, and it was not amended. When that entry was brought to his attention because of the liquidation, without notice of appraisement, it was too late to amend, as the appraisement had been completed.

After submission of the case, a brief was filed by petitioner, but counsel for the Government filed a notice, stating that "upon consideration of the record made and the brief filed by counsel for the Petitioner, this office does not desire to file a brief on behalf of the United States."

On the record presented, we are of opinion that the petitioner, in undervaluing its merchandise, acted in entire good faith. Before making entry, an investigation of the value of the merchandise was made in Canada, and petitioner was informed of the prices fixed by the Canadian price control authority. Petitioner understood and believed that the price it paid was the only price under Canadian law for this merchandise on the basis it was purchasing. When its values were questioned, a further investigation was made, customs officials were advised of the result, and petitioner expressed its willingness to amend the entries to the amount which subsequently became the final appraised value. When customs officials did not agree, a test case was brought and diligently prosecuted. Under these circumstances, we find that the petition should be granted. *Syndicate Trading Co.* v. *United States*, 13 Ct. Cust. Appls. 409, T. D. 41339; *United States* v. *Daimon Raike Co.*, 17 C. C. P. A. (Customs) 406, T. D. 43836; *Charles T. Wilson Co., Inc.* v. *United States*, 24 Cust. Ct. 66, C. D. 1209.

Judgment will be rendered accordingly.